# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-2717

VALENTIN ASENOV BITSIN,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

---

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A088-188-257

---

ARGUED JANUARY 22, 2013—DECIDED MAY 31, 2013

---

Before RIPPLE and ROVNER, *Circuit Judges*, and BARKER, *District Judge*.[*]

RIPPLE, *Circuit Judge*. Valentin Asenov Bitsin, a native and citizen of Bulgaria, petitions for review of an order

---

[*] The Honorable Sarah Evans Barker, of the United States District Court for the Southern District of Indiana, sitting by designation.

of the Board of Immigration Appeals ("BIA") denying him asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). For the reasons set forth in this opinion, we dismiss the petition in part and deny it in part.

**I**

**BACKGROUND**

**A. Facts**

Mr. Bitsin last entered the United States in May 2005 as a visitor, authorized to stay until October 2005.[1] Before his visa expired, Mr. Bitsin decided that he would like to remain in the United States to pursue further education at Solex College in Chicago, Illinois. In August 2005, therefore, he submitted an application for a student visa; he was assisted in his application by an attorney, whom the college had suggested. Mr. Bitsin was advised that his application could take between six months and one year to process. According to Mr. Bitsin's testimony at his removal hearing, it was his understanding that he would be "allowed to just stay," but not to work, while the immigration authorities were processing his application.[2] Once his papers were filed, Mr. Bitsin attempted to contact the attorney by telephone to check the status of his application, but "[t]he

---

[1] He previously had come to the United States in both 2003 and 2004, also on visitor visas.

[2] A.R. at 128.

telephone was out of service."[3] He later went to the attorney's office in person only to discover that the office had been closed. In 2007, he was arrested by immigration authorities and placed in removal proceedings.

## B. Administrative Proceedings

### 1.

In removal proceedings, Mr. Bitsin applied for asylum, withholding of removal and relief under the CAT. During the hearing, Mr. Bitsin testified that his father was Asen Bitsin, a retired military officer in Bulgaria. After retiring, he began his own private security company. Mr. Bitsin further stated that his father was quite successful and that this success threatened the business interests of an organized crime syndicate run by the "Galev Brothers," who also were in the business of providing security services.[4]

In 2000, one of Asen's businesses was attacked by individuals affiliated with the Galev Brothers. Asen was on the property at the time; he fired warning shots, accidentally hitting one of the intruders. Mr. Bitsin testified that, as a result of this incident, local police accused his father of unauthorized use of a weapon; the prosecutor, however, refused to pursue the matter on the

---

[3] *Id.*

[4] *Id.* at 133.

ground that there was no evidence of criminal intent. Mr. Bitsin was a student in Blagoevgrad and was not present when the incident occurred.

Mr. Bitsin testified that, unbeknownst to him, his father continued to have difficulties with the Galev Brothers over the next few years and began to cooperate in an ongoing investigation of the Galev Brothers' organization. In 2007, Bulgarian officials instituted a criminal proceeding against the Galev Brothers, which later was postponed because the targets of the investigation were seeking elected office. At some point after the proceedings began, the fact that Asen was planning to testify became known, and the Bulgarian government took him into protective custody. The trial recommenced in 2010,[5] and Asen testified in the proceedings. In November 2010, the Galev Brothers were acquitted. To Mr. Bitsin's knowledge, his father remains under the protection of the Bulgarian government while the authorities "look[] for chances to reopen . . . the court proceedings."[6]

Mr. Bitsin further testified that he is afraid to return to Bulgaria because of his father's activities. He pointed to another cooperating witness by the name of Chorata, who was murdered while in police custody. Additionally, in 2009, neighbors of Asen, who, according to Mr. Bitsin, also were cooperating with the investigation of the

---

[5] When the trial recommenced, Mr. Bitsin's mother and sister went to visit relatives in France. At the time of Mr. Bitsin's merits hearing, they still resided there.

[6] A.R. at 144.

Galev Brothers, were killed when a bomb exploded in their garage. Finally, Mr. Bitsin submitted evidence concerning a reporter, Lidia Pavlova, who lived in fear because she had attempted to expose the Galev Brothers' criminal activities. An individual affiliated with the Galev Brothers attacked Pavlova's son and received only six months' probation for the attack.

## 2.

In an oral ruling, the Immigration Judge ("IJ") held that Mr. Bitsin's application for asylum was time-barred because he had not applied for asylum within one year of arriving in the United States and did not "fall[] within any one of the exceptions contained in the regulations."[7] With respect to the application for withholding of removal, the IJ determined that Mr. Bitsin had testified credibly concerning

> his manner of entry into the United States, his repeated admissions as a J1, the incident in 2000 in which his father shot an intruder, his father's involvement in a security business, and the threats against his father by what appears to have been a criminal mafia known as the Gruprovki and his fear of the Galev Brothers, and the criminal proceedings against the Galev Brothers which were undertaken in Bulgaria.[8]

---

[7]  *Id.* at 86.

[8]  *Id.* at 87.

Nevertheless, the IJ concluded that Mr. Bitsin had not established that he was more likely than not to suffer persecution should he be returned to Bulgaria. Specifically, the IJ found that "[h]e merely alleged that in the most general terms that he was the victim of corruption. That is not sufficient to establish a likelihood of persecution."[9] The IJ also found that Mr. Bitsin had not met his burden of establishing that it was more likely than not that he would be tortured by the Bulgarian government or that the Bulgarian government would be complicit in his torture, should he be returned to his native country. Consequently, he was not eligible for relief under the CAT.

**3.**

The BIA affirmed with its own opinion. It agreed with the IJ that Mr. Bitsin had not established an exception that would excuse the late filing of his asylum application. Specifically, he had not established that his filing for a change in status constituted "extraordinary circumstances."[10] Nor had he "shown receipt of an affirmative communication from the [Department of Homeland Security], that would support his assertion on appeal that he was given the equivalent of an adminis-

---

[9] *Id.*

[10] *Id.* at 3 (internal quotation marks omitted); *see* 8 U.S.C. § 1158(a)(2)(D).

trative parole."[11] Furthermore, he had not established that his father's involvement in the court case against the Galev Brothers "should be construed as an 'activity' that the respondent 'bec[ame] involved in outside of [Bulgaria],'" so as to fall within the exception to the one-year requirement set forth in 8 C.F.R. § 1208.4(a)(4)(i)(B).[12] Consequently, his asylum application was untimely.

The BIA also agreed with the IJ that Mr. Bitsin had not established one of the requirements for withholding of removal: a clear probability of persecution on account of a protected category, namely his membership in a social group. It noted that Mr. Bitsin had lived in Bulgaria after Asen began having difficulties with the Galev Brothers, but that Mr. Bitsin "ha[d] not received any threats from any individual or entity for any reason."[13] Moreover, Mr. Bitsin had "provided little detail about the circumstances surrounding the alleged explosion at another witness's house or the shooting of a former cohort of the Galev Brothers, such that would support the conclusion that the respondent, as a son of a witness, would . . . more likely than not be targeted for persecution by the Galev Brothers."[14] Additionally, Mr. Bitsin had not met his burden of showing that "the Bulgarian government would be unable or unwilling

---

[11] A.R. at 3 (internal quotation marks omitted).

[12] *Id.* at 4 (first alteration in original).

[13] *Id.* at 5.

[14] *Id.*

to protect [him], as [he] testified that the government protected his father whom it placed in a witness protection program."[15]

Finally, the BIA concluded that the IJ "properly concluded that the respondent did not satisfy his burden of showing that it is more likely than not that he will be tortured by or at the instigation of or with the consent or acquiescence of the Bulgarian government."[16] Consequently, Mr. Bitsin did not qualify for relief under the CAT.

Mr. Bitsin timely appealed.

## II

## DISCUSSION

On appeal, Mr. Bitsin seeks review and reversal of the BIA's determinations with respect to his applications for asylum, withholding of removal and relief under the CAT. We turn our attention first to his arguments concerning asylum.

### A. Jurisdiction to Review Asylum Determination

#### 1.

Section 1158(a)(2)(B) of Title 8 requires that aliens apply for asylum within one year after their arrival in the

---

[15] *Id.* at 6.

[16] *Id.*

United States. An alien's application for asylum never-theless "may be considered" if he "demonstrates . . . either the existence of changed circumstances which materially affect [his] eligibility for asylum or extraordinary circumstances relating to the delay" in filing the application within the prescribed one-year period. 8 U.S.C. § 1158(a)(2)(D). Section 1158(a)(3), however, deprives courts of jurisdiction to review a determination regarding the timeliness of an alien's application for asylum or the existence of changed or extraordinary circumstances to excuse his late filing.[17]

---

[17] 8 U.S.C. § 1158 provides, in relevant part:

**(a) Authority to apply for asylum**

**(1) In general**

Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title.

**(2) Exceptions**

. . . .

(continued...)

Despite § 1158(a)(3), this court may review constitutional claims or questions of law related to the timely filing of

---

[17] (...continued)

**(B) Time limit**

Subject to subparagraph (D), paragraph (1) shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States.

. . . .

**(D) Changed circumstances**

An application for asylum of an alien may be considered, notwithstanding subparagraphs (B) and (C), if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B).

**(3) Limitation on judicial review**

No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2).

an asylum application. *See* 8 U.S.C. § 1252(a)(2)(D).[18] We have interpreted this exception to apply "to strictly legal controversies," by which we "mean[] that the parties contest a legal issue, and that the alien wins if the law provides what he says it does and loses if it provides what the agency says it does." *Restrepo v. Holder*, 610 F.3d 962, 965 (7th Cir. 2010).

In *Viracacha v. Mukasey*, 518 F.3d 511 (7th Cir. 2008), we considered whether an alien's argument—that changed circumstances justified a delay in applying for asylum—was a pure question of law for purposes of § 1252(a)(2)(D). In that case,

> [a]n immigration judge concluded that [Viracacha] had not established "the existence of changed circumstances which materially affect the applicant's eligibility for asylum," § 1158(a)(2)(D). He argued that he fears the Revolutionary Armed Forces of Colombia (FARC), an insurgent group that threatened him with death after he opposed its operations. But because he told the immigration judge that he had

---

[18] 8 U.S.C. § 1252(a)(2)(D) provides:

Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

> left Colombia in 1998 precisely because of the FARC's threats, the IJ found that he should have applied for asylum immediately on arriving in the United States. [Viracacha] testified that he delayed because he expected the domestic situation in Colombia to improve, but that it had instead (in his view) become worse. The IJ did not see this as an adequate justification, both because conditions in Colombia had not changed materially and because hoping for improvement does not justify delay in filing.

*Id.* at 512. The BIA affirmed. Before this court, Viracacha maintained that the IJ and the BIA "erred on a question of law," and, therefore, his petition for review fell within the exception to the jurisdictional bar for "constitutional claims or questions of law." *Id.* at 514 (citations omitted) (internal quotation marks omitted). We disagreed. We noted that the IJ had found that Viracacha "had deliberately refrained from making a timely application for asylum, and that any change in conditions in Colombia since then [wa]s not material." *Id.* We explained that the first conclusion is one of "fact and the second is an application of law to fact; neither rests on or reflects a legal mistake." *Id.*; *see also Ferry v. Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006) ("Ferry's argument that his pending adjustment of status application qualified as either a changed or extraordinary circumstance to excuse his untimely asylum application is a challenge to an exercise of discretion that remains outside our scope of review."). Consequently, we did not have jurisdiction to consider the alien's ar-

guments. We likewise are precluded from considering Mr. Bitsin's arguments concerning the materiality of any change in circumstances in Bulgaria.

Our review of Mr. Bitsin's claim that he established "extraordinary circumstances" that justify the delay in his application similarly is barred. Whether particular facts constitute "extraordinary circumstances" is akin to whether particular "changed circumstances" are material. *See Sukwanputra v. Gonzales*, 434 F.3d 627, 635 (3d Cir. 2006) (holding that whether petitioner had "met her burden of demonstrating changed circumstances materially affecting asylum eligibility or extraordinary circumstances relating to the delay challenges [the Attorney General's] exercise of discretion" and therefore "[s]uch a claim does not raise a constitutional claim or question of law covered by the REAL ID Act's judicial review provision"). In either case, the question requires us to apply a legal standard to a given set of facts. *See Zhu v. Gonzales*, 493 F.3d 588, 596 (5th Cir. 2007) ("Thus, the IJ's rejection of Zhu's extraordinary-circumstances claim was based on an evaluation of the facts and circumstances of her case. We do not have jurisdiction to review the IJ's determination that Zhu's asylum application was untimely."). As we held in *Viracacha*, this type of issue does not raise a question of law, and it therefore does not fall within § 1252's exception to the jurisdictional bar of § 1158.

**2.**

Mr. Bitsin argues that the court nonetheless may consider his asylum application because the BIA com-

mitted an error of law in its interpretation of 8 C.F.R.
§ 1208.4(a)(5)(iv). Section 1208.4(a)(5) sets forth some
"extraordinary circumstances" that justify an alien's
delay in filing for asylum, among which is: "(iv) The
applicant . . . was given parole[] . . . ." Although Mr. Bitsin
never was granted parole, he nevertheless claims that
he obtained the equivalent of administrative parole
when he filed his application for a student visa.
He points to a United States Justice Department Memo-
randum, the subject of which is "Interpretation of
'Period of Stay Authorized by the Attorney General' in
determining 'unlawful presence' under INA section
212(a)(9)(B)(ii)," to support his claim.[19] This memoran-
dum, however, addresses how to calculate the period
of unlawful presence for purposes of *determining inad-
missibility*; it does not purport to speak to filing dead-
lines for asylum.[20]

---

[19] *See* Interpretation of "Period of Stay Authorized by the
Attorney General" in determining "unlawful presence" under
INA section 212(a)(9)(B)(ii) (2003), http://www.uscis.gov/files/
pressrelease/PofStay4023Pub.pdf.

[20] Mr. Bitsin also submits that a memorandum explaining
the "Deferred Action for Childhood Arrivals" Program sup-
ports his claim. *See* Exercising Prosecutorial Discretion with
Respect to Individuals Who Came to the United States as Chil-
dren (2012), http://www.dhs.gov/xlibrary/assets/s1-exercising-
prosecutorial-discretion-individuals-who-came-to-us-as-
children.pdf. Mr. Bitsin did not come to the United States as a
child. Moreover, the memorandum only sets forth the agency's
(continued...)

**3.**

Finally, Mr. Bitsin submits that we may review his asylum claim because the BIA incorrectly concluded, as a matter of law, that an alien asserting a derivative asylum claim may not invoke the changed circumstances exception to the one-year filing deadline. The BIA's decision does not state, nor even suggest, such a result.

Section 1208.4 of Title 8 of the Code of Federal Regulations implements the one-year filing deadline for asylum applications, as well as the exceptions to that deadline, set forth in 8 U.S.C. § 1158. With respect to the "changed circumstances" exception, it states that "changed circumstances . . . shall refer to circumstances materially affecting the applicant's eligibility for asylum." *Id.* § 1208.4(a)(4)(i) (internal quotation marks omitted). These

> *include, but are not limited to*: . . . (B) Changes in the applicant's circumstances that materially affect the applicant's eligibility for asylum, including changes in applicable U.S. law *and activities the applicant becomes involved in outside the country of feared persecution* that place the applicant at risk[.]

*Id.* (emphasis added).

Before the BIA, Mr. Bitsin argued that the IJ erred in failing to consider whether his father's cooperation

---

[20] (...continued)
priorities with respect to allocation of prosecutorial resources; it does not speak to, nor does it create, rights for private individuals.

with the Bulgarian government constituted an "activit[y] the appellant bec[ame] involved in outside the country of feared persecution" for purposes of 8 C.F.R. § 1208.4(a)(4)(i)(B). The BIA correctly determined, however, that the IJ had not erred because there was "no support" for the conclusion that Asen's "involvement in a Bulgarian case should be construed as an 'activity'" that Mr. Bitsin himself "'bec[ame] involved in outside of the country of feared persecution.'" A.R. at 4 (alteration in original) (quoting 8 C.F.R. § 1208.4(a)(4)(i)(B)). Nothing in this statement holds—as Mr. Bitsin maintains—or even suggests that the actions or political opinions of a relative in the applicant's country of origin cannot constitute changed circumstances. Indeed, in the present case, the BIA considered whether Asen's cooperation materially affected Mr. Bitsin's application, but concluded that it did not. *See id.*

In sum, none of the issues Mr. Bitsin raises with respect to the determination that he does not fall within an exception to the one-year filing deadline for asylum applications are "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). Consequently, we do not have jurisdiction to consider the denial of his asylum application.

## B. Withholding of Removal

An applicant is eligible for withholding of removal if he "demonstrate[s] a clear probability of persecution on account of his 'race, religion, nationality, membership in

a particular social group, or political opinion.'" *Tariq v. Keisler*, 505 F.3d 650, 656 (7th Cir. 2007) (quoting 8 U.S.C. § 1231(b)(3)(A)). To establish a "clear probability," the petitioner must show "that 'it is more likely than not that [he] would be subject to persecution' in the country to which he would be returned." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987) (quoting *INS v. Stevic*, 467 U.S. 407, 429-30 (1984)). "Persecution" does not include the actions of private citizens "unless the government is complicit in those acts or is unable or unwilling to take steps to prevent them." *Chakir v. Gonzales*, 466 F.3d 563, 570 (7th Cir. 2006). We review the BIA's decision[21] with respect to a denial of withholding of removal under the substantial evidence test. *Haichun Liu v. Holder*, 692 F.3d 848, 852 (7th Cir. 2012). Under the substantial evidence test, the decision of the Board "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole," and we will "reverse[] only if the evidence presented . . . was such that a reasonable factfinder would have to conclude" that the petitioner had met his burden. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal quotation marks omitted).

---

[21] Where, as here, the Board issued its own opinion, the Board's decision forms the basis for our review. *See, e.g., Liu v. Ashcroft*, 380 F.3d 307, 311 (7th Cir. 2004).

**1.**

Mr. Bitsin first maintains that, with respect to the decision to deny withholding of removal, the IJ mistakenly understood his claim to be based on his own, as opposed to his father's, activities in Bulgaria. We observe that the IJ's opinion does employ the first and third person interchangeably, which may suggest some confusion with respect to the nature of Mr. Bitsin's claim. Nevertheless, the BIA clearly understood that Mr. Bitsin's claim for relief centered on Asen's activities, *see, e.g.*, A.R. at 5 ("The respondent has endeavored to define his particular social group in several ways, but the definitions were all, ultimately, derived from his family relationship with his father who was a cooperating witness at a trial against the Galev Brothers[] . . . ."), and, in any event, it is the BIA's decision, not the IJ's, that this court reviews, *Liu v. Ashcroft*, 380 F.3d 307, 311 (7th Cir. 2004).

**2.**

Mr. Bitsin next claims that the BIA ignored the credibility findings of the IJ and the wealth of the evidence in concluding that Asen was not "subject[ed] to a frivolous police investigation and slanderous media publicity" concerning the shooting incident in 2000. A.R. at 5 n.4. The IJ, however, did not make any credibility findings concerning the nature or significance of the shooting incident, but merely determined that Mr. Bitsin testified credibly that his father had shot an intruder. The IJ later concluded that he could not

attribute to the incident the significance urged by Mr. Bitsin because it was "a non-political event involving his father working as a guard or protecting property as a security official." *Id.* at 89. Moreover, neither the fact that the prosecutor declined to bring charges against Asen, nor the quotes from a local newspaper that characterize the shots as "fired to 'prevent' the intruder from 'running farther,'" Pet'r's Br. 24 (quoting A.R. at 190), required the BIA to conclude that the Galev Brothers had commanded the assistance of local police or the media in persecuting or slandering Asen.

### 3.

At bottom, Mr. Bitsin argues that the evidence he presented required the BIA to conclude that, based on his familial ties with his father,[22] he will suffer harm at

---

[22] Mr. Bitsin contends that he will suffer persecution on the basis of his membership in the social group consisting of individuals who have testified (or will testify) against the Galev Brothers and of those individuals' family members. *See* Pet'r's Br. 25. He also claims that he will be persecuted on the basis that his father's political opinion—"his father's status as a whistleblower and his overt and public expressions of disapproval of the corrupt practices of the police and local authorities who provide assistance to the criminal activities of the Galev Brothers"—will be imputed to him. *Id.* at 26. We need not determine, however, whether Mr. Bitsin has met his burden of establishing that he is a member of a particular social group, or that his father's activities constitute a political

(continued...)

the hands of the Galev Brothers if returned to Bulgaria. As we noted previously, however, "persecution . . . does not encompass purely private actions." *Jonaitiene v. Holder*, 660 F.3d 267, 270 (7th Cir. 2011). Consequently, Mr. Bitsin had to establish not only a clear probability that he would be persecuted at the hands of the Galev Brothers, but that the Bulgarian government either would be complicit in these actions or would be unwilling or unable to prevent them. *See Chakir*, 466 F.3d at 570.

Turning to the evidence supporting his claim that he would be harmed if he returned to Bulgaria, Mr. Bitsin points to his father's participation in the trial against the Galev Brothers, the threats received by his father and his father's placement in protective custody. He also relies on the harm that has befallen Chorata and Asen's neighbors, whom, Mr. Bitsin asserts, were slated to testify against the Galev Brothers, and the attack on Pavlova's son, for which the assailant received only six months' probation.

---

[22] (...continued)

opinion that will be imputed to him, because we conclude that Mr. Bitsin has not met his initial burden of showing a clear probability of persecution should he be removed to Bulgaria. *Cf. Jun Ying Wang v. Gonzales*, 445 F.3d 993, 997 (7th Cir. 2006) ("Wang must make two showings. First, she must establish that she has suffered past persecution or has a well-founded fear of future persecution. Second, she must show that the persecution she endured (or fears she will endure) is 'on account of' one of the five statutorily protected grounds.").

Although Mr. Bitsin has produced evidence that he may be at risk if he returns to Bulgaria, the evidence does not require a reasonable factfinder to conclude either that Mr. Bitsin established a clear probability that he will suffer harm at the hands of the Galev Brothers or that the Bulgarian government is unable or unwilling to protect him. According to Mr. Bitsin, Asen has had difficulties with the Galev Brothers since 2000; nevertheless, although Mr. Bitsin was in Bulgaria intermittently until 2005, he never personally was threatened or harmed. More importantly, however, the Bulgarian authorities have not been complicit in the actions of the Galev Brothers, but have instituted and pursued criminal proceedings against them. We previously have observed that a government's steps "to punish the persons responsible for the violence" supports a conclusion that it is not unwilling or unable to protect individuals who have been the victims of ethnic attacks. *Vahora v. Holder*, 707 F.3d 904, 908 (7th Cir. 2013). Additionally, the Bulgarian government has been providing Asen with protection, and has kept him safe, for almost two years following the conclusion of the Galev Brothers' trial. Thus, this case does not present a situation where an individual has sought help, but simply was "advi[sed] to maintain a low profile"—circumstances which, we have concluded, are "strong evidence that the government . . . is indeed incapable of protecting" the applicant. *Hor v. Gonzales*, 421 F.3d 497, 502 (7th Cir. 2005).[23]

---

[23] In his reply brief, Mr. Bitsin argues that the IJ and the

(continued...)

[23] (...continued)

BIA erred in evaluating his claim for withholding of removal because they required him to meet a more onerous burden than we have imposed in prior cases. According to Mr. Bitsin, he was required to show "the complete helplessness of the Bulgarian government" to protect him from the Galev Brothers, whereas we previously have required only a showing that the government was unwilling or unable to afford protection. *See* Reply Br. 6-7 (internal quotation marks omitted) (emphasis removed). Mr. Bitsin only fully developed this argument in his reply brief, and, therefore, the argument is waived. *See Bodenstab v. County of Cook*, 569 F.3d 651, 658 (7th Cir. 2009) ("Bodenstab, however, did not develop these arguments until his reply brief and thus has waived any such argument.").

Even if he had not waived the argument, however, we cannot agree that it provides a basis for reversal. As we previously have noted, we review the decision of the BIA, not the IJ. *See supra* note 21. In this case, the BIA did not fault Mr. Bitsin for failing to establish *the complete helplessness* of the Bulgarian government; instead, it stated that, "[e]ven if the Galev Brothers were acquitted by a regional court, this alone does not demonstrate that the Bulgarian government would be *unable or unwilling* to protect the respondent." A.R. at 6 (emphasis added). The BIA then cited correctly one of our opinions, *Margos v. Gonzales*, 443 F.3d 593, 599 (7th Cir. 2006), in which we employed the following language: "This is not a case in which the government at issue is unwilling and completely unable to afford protection." *See also Hor v. Gonzales*, 421 F.3d 497, 501 (7th Cir. 2005) ("You cannot even claim asylum on the basis of persecution by a private group unless the government either condones it or is helpless to prevent it[] . . . .").

(continued...)

## C. Relief under the CAT

Mr. Bitsin also seeks review of the BIA's determination that he "did not satisfy his burden of showing that it is more likely than not that he will be tortured by or at the instigation of or with the consent or acquiescence of the Bulgarian government." A.R. at 6. To prevail on his petition for review, Mr. Bitsin must establish that the BIA's determination was not supported by substantial evidence. *Wanjiru v. Holder*, 705 F.3d 258, 265 (7th Cir. 2013). Under this deferential standard, we shall reverse only if a reasonable factfinder would have to conclude that Mr. Bitsin met his burden. *See Elias-Zacarias,* 502 U.S. at 481.

In order to establish eligibility for relief under the CAT, Mr. Bitsin must show that "'it is more likely than not that he . . . will be tortured'" if he is returned to Bulgaria. *Rashiah v. Ashcroft*, 388 F.3d 1126, 1131 (7th Cir. 2004) (quoting 8 C.F.R. § 208.16). According to the regulations, torture is defined as "any act by which severe pain or suffering[] . . . is intentionally inflicted on a person . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). Given that the Bulgarian authorities both have attempted to bring the Galev Brothers to justice and also have provided pro-

---

[23] (...continued)
There simply is no evidence here that the BIA applied a standard more stringent than that the government of Bulgaria was "unable or unwilling" to protect Mr. Bitsin.

tection for Asen during the course of criminal pro-
ceedings, we cannot conclude that Mr. Bitsin has met
his burden of showing that he will more likely than not
be tortured "at the instigation of or with the consent
or acquiescence of" the Bulgarian government should
he return to that country.

### Conclusion

For the foregoing reasons, we dismiss for lack of juris-
diction that portion of Mr. Bitsin's petition related to
his asylum application, and we deny that portion of
Mr. Bitsin's petition related to his claims for with-
holding of removal and relief under the CAT.

PETITION DISMISSED in part AND
DENIED in part