In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1679

REYNA LIZZETTE URBINA-DORE, *et al.*,

*Petitioners*,

*v.*

ERIC H. HOLDER, JR., Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals

ARGUED OCTOBER 8, 2013 — DECIDED NOVEMBER 18, 2013

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Petitioners are citizens of Honduras. They applied for asylum in the United States, contending that they had been persecuted as members of the "social group" of persons owning timberlands and would face more risks if returned to their native land. Organized squatters known internationally as La Via Campesina supply the basis of their claim. Petitioners testified that Honduran campesinos (who may or may not be affiliated with the

international movement) invade agricultural lands in force and take over production; if they raise the national flag and assert that owners are not using the land, police and judges are unwilling to evict them. Timber-bearing lands may remain out of production for many years while trees mature. This makes them targets for campesinos, who cut and sell the timber. Petitioners assert that campesinos occupied their land in 2008 and that they fear for their lives should they return to assert their rights as the lawful owners.

An immigration judge denied the request for asylum on three grounds: (1) that the past and feared future harm do not amount to persecution; (2) that the squatters' acts did not occur because of petitioners' membership in any particular group but were instead done for profit and with indifference to who was injured as a result; and (3) that the squatters' acts could not be imputed to the government.

Each of these three grounds reflects an aspect of 8 U.S.C. §1101(a)(42)(A), the cornerstone of the asylum process. The statute permits federal officials to grant asylum to aliens who seek refuge here "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion". The IJ's first and third reasons both concern the definition of "persecution", which differs from less serious travails of life (ground 1) and also entails governmental discrimination rather than private crime (ground 3). See *Hor v. Gonzales*, 421 F.3d 497 (7th Cir. 2005); *Bitsin v. Holder*, 719 F.3d 619, 628–31 (7th Cir. 2013). The second ground concerns the statutory causation requirement.

Petitioners contested all three issues before the Board of Immigration Appeals, for an adverse decision on any one of

the issues is conclusive against them. The BIA bypassed the first issue, as it was entitled to do, see *INS v. Bagamasbad*, 429 U.S. 24 (1976), and ruled against petitioners on the other two. As the Board saw matters, the record establishes that the campesinos are thieves whose own interests, rather than antipathy toward petitioners' ownership, led to the organized invasion of petitioners' land.

The Board added that, although a government's unwillingness or inability to control private misconduct can justify treating crime as persecution, Honduras is both willing and able to control the campesinos. Local police initially did not intervene, but petitioners hired a lawyer who obtained a court order requiring them to do so. A task force of 70 officers then removed the squatters. Some returned—but so did the police, who evicted them a second time. Petitioners contended that Honduras's legal system protects squatters who raise the national flag on other people's land, but the Board thought that actions speak more loudly than words—and the police turned out in force to enforce the judge's eviction order. Petitioners say that they fear a repetition of the invasion; the Board thought that this would just lead to a repetition of the eviction.

The main questions in this court are—or should have been—whether substantial evidence supports the Board's conclusions that the campesinos did not act "because of" petitioners' status as owners, and that at all events Honduras is both willing and able to protect landowners from campesinos. Instead, however, petitioners devote almost all of their brief to the question whether owners of rural land, or of timber-bearing land in particular, constitute a "social group" as the statute uses that term. Our decision in *Cece v. Holder*, No.

11-1989 (7th Cir. Aug. 9, 2013) (en banc), reflects disagreement with the way the Board has applied that term, and it could well be that the approach in *Cece* would require the Board to recognize the sort of "social group" that petitioners propose. But how could a decision in petitioners' favor on this subject help them? Some language in the immigration judge's decision expresses doubt about petitioners' proposed "social group," but it did not underpin the IJ's adverse decision—and for the sake of argument the Board assumed that petitioners belong to a cognizable social group. Petitioners and appellants need to address the issues on which they lost, and "social group" is not among them.

Petitioners briefly mention the causation question (whether the campesinos acted because of petitioners' status as landowners) and allude to the question whether Honduras is unwilling or unable to control agricultural squatters, but they do not develop an argument on either subject. Petitioners say that the campesinos may return and that four of them were seen in 2009 wielding machetes near their land and were heard to threaten retaliation for the eviction. These events may explain why petitioners have hired a guard for their land and are uneasy about returning to Honduras, but they do not come to grips with the Board's conclusion that the government is both willing and able to control trespasses and other threats of misconduct by campesinos.

The Board has used the "unwilling or unable to control" formula since 1964 yet has never attempted to quantify just how far a nation may depart from perfect law enforcement without being deemed complicit in private crimes. See *Cece*, slip op. 29–30 (separate opinion). Many places in the United States endure high levels of violence without any suggestion

that the police and judiciary have abetted criminals in "persecution" of persons whose property is stolen or whose lives are threatened. But we need not explore the subject here. Petitioners have not asked us to address it or explained why they think Honduras's demonstrated commitment to evicting their squatters is inadequate. We have not been given any reason to doubt that the Board's decision is supported by substantial evidence, so the petition for review is

DENIED.