NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 28, 2014[*]
Decided October 10, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

No. 14-1193

| | |
|---|---|
| ASHABEN P. PATEL and NAIMESHKUMAR N. PATEL, *Petitioners*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| | Nos. A089 282 597 & A089 282 598 |
| *v.* | |
| ERIC H. HOLDER, JR., Attorney General of the United States, *Respondent*. | |

**O R D E R**

Naimeshkumar and Ashaben Patel met and married in the United States after both had used a fraudulently obtained visitor's visa to gain entry. Ten years later the government initiated removal proceedings, prompting the couple to apply for asylum, withholding of removal, and relief under the Convention Against Torture. They

---

[*]The parties represent that oral argument is unnecessary. Having examined the briefs and the record, we agree with their assessment. Thus the petition is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C), (f).

asserted that, if returned to India where both are citizens, they will be harmed by the family of Naimeshkumar's *ex-wife.* An immigration judge denied relief and ordered the couple removed, and the Board of Immigration Appeals upheld that decision. The Patels have petitioned for review. We recount the background facts as found by the IJ and accepted by the Board.

Naimeshkumar married his first wife, Gitaben, in a Hindu ceremony in India in 1995. The marriage soured in 1997 or 1998, as did relations between the two families. The couple agreed to end the marriage in 1999, and Gitaben returned to her family. The marriage had never been registered with the government, and thus it ended without the formality of a divorce.

Gitaben's family, despite endorsing the couple's breakup, filed a police report falsely accusing Naimeshkumar and his family of demanding a dowry and beating Gitaben and—according to Indian legal documents submitted by the Patels—her sister, who was married to Naimeshkumar's brother. (In India, demanding a dowry is unlawful. *See* Judith G. Greenberg, *Criminalizing Dowry Deaths: The Indian Experience*, 11 AM. U. J. GENDER SOC. POL'Y & L. 801, 807 n.26 (2003).) The police arrested Naimeshkumar, his brother, and their parents. All four were released on bail after spending one night in jail. In April 2000, while the criminal charges were pending, Naimeshkumar used a false name to enter the United States as a visitor. The charges against him and his family were dismissed later that year.

Ashaben entered the country unlawfully two years later; Naimeshkumar testified that the couple married in a religious ceremony in 2003. They have two daughters (now 9 and 5 years old) who were born in the United States. In 2005, when their first daughter was 11 months old, the Patels sent her to live with Naimeshkumar's family in India for the next five years. When the daughter returned to the United States in 2010, immigration authorities discovered that both Patels were in the country unlawfully. The government charged that they were removable because they had procured their visas by fraud, *see* 8 U.S.C. §§ 1227(a)(1)(A), 1182(a)(6)(C)(i), overstayed those visas, *see id.* § 1227(a)(1)(B), and violated the conditions of the visas by obtaining employment while in the United States, *see id.* § 1227(a)(1)(C)(i).

The Patels conceded removability on all grounds but applied for asylum, withholding of removal, and relief under the CAT. They maintained that the family of Naimeshkumar's ex-wife will harm them and their children if they return to India. (The Patels filed separate applications, though Ashaben also is listed as a derivative

beneficiary on Naimeshkumar's application. For simplicity we refer to "application" in the singular because the claims of both Patels are premised entirely on their fear of Naimeshkumar's former in-laws.) In their application the couple asserted that they had not sought asylum within the one-year deadline, *see id.* § 1158(a)(2)(B), 8 C.F.R. § 1208.4(a)(2), because they were ignorant of U.S. asylum laws.

At the Patels' consolidated removal hearing in 2012, only Naimeshkumar testified. He said he fears returning to India because his ex-wife's family filed the false police report and had threatened him (he did not describe how) in 1999. Court documents submitted by the Patels corroborated Naimeshkumar's account of his arrest. Naimeshkumar explained that Gitaben's family had been "very angry" when their marriage ended and "may still be angry," but he acknowledged that his family had not been in contact with hers since September 2000 when the criminal case ended. The Patels also submitted two reports on India from the U.S. State Department (one on human rights generally, the other on religious freedom) and several news articles. These materials describe government corruption in India and estimate that about 1,000 honor killings occurred in 2010. Young men as well as women were killed or injured by their family, clan, or community, according to these accounts, usually for marrying outside of their caste. Naimeshkumar contended that he is entitled to asylum or withholding of removal because he was persecuted as a member of the "social group of divorced Hindu men."

In an oral decision, the IJ concluded that the Patels' application for asylum was untimely because they had not applied within a year of entering the United States and could not assert their ignorance of immigration law as an extraordinary circumstance excusing the late filing. *See* 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(5). As to withholding of removal, the IJ rejected as too broad the proposed social group of divorced Hindu men. And even if this social group is legitimate, the IJ continued, Naimeshkumar would be ineligible for withholding: First, the false police report, the single night in jail, and the dismissed criminal charges did not amount to past persecution; and, second, the Patels' evidence did not establish that future persecution was likely because Gitaben's family had not been heard from since 2000. Moreover, the IJ reasoned, the Patels' decision to send their infant daughter to live in India undermines Naimeshkumar's professed fear that he and his family will be harmed if removed. The IJ also concluded that Naimeshkumar is not entitled to relief under the CAT because he did not prove that he more likely than not will be tortured by the Indian government if returned to that country. Finally, the IJ explained that the overlapping factual bases means that the denial of Patel's claims also precludes relief for Ashaben.

The Board issued its own opinion upholding the IJ's decision. It agreed with the IJ that ignorance of the law does not constitute an extraordinary circumstance that excuses the late filing of an asylum application. Even assuming the validity of Naimeshkumar's proposed social group of divorced Hindu men in India, the Board continued, the Patels' evidence did not establish either past persecution or a clear probability of future persecution. Finally, the Board also agreed with the IJ that the Patels were not eligible for relief under the CAT because they did not establish that they would more likely than not be tortured by the Indian government (or with the government's acquiescence) if returned to that country.

In their petition for review, the Patels seek to overturn the Board's determinations that they are not entitled to asylum, withholding of removal, or relief under the CAT. They first challenge the Board's determination that their asylum claim was untimely. But we do not have "jurisdiction to review a determination regarding the timeliness of an alien's application for asylum or the existence of changed or extraordinary circumstances to excuse his late filing" unless we are presented with constitutional claims or questions of law. *Bitsin v. Holder*, 719 F.3d 619, 625 (7th Cir. 2013); *see* 8 U.S.C. §§ 1158(a)(3), 1252(a)(2)(D). And the Board's conclusion that the Patels' ignorance of the law is not an extraordinary circumstance does not involve any legal or constitutional question. *See Tian v. Holder*, 745 F.3d 822, 824–26 (7th Cir. 2014).

The Patels next argue that the Board's denial of withholding of removal is not supported by substantial evidence. An alien is eligible for withholding of removal if he establishes either that he has suffered past persecution or that it is more likely than not that he will be persecuted in the country to which he would be removed. 8 C.F.R. § 1208.16(b); *Bitsin*, 719 F.3d at 628. The Patels maintain that their evidence establishes both that Naimeshkumar was persecuted in the past and that it is more likely than not that the Patels will be persecuted if returned to India.

"We review the Board's findings under the 'substantial evidence' standard, which requires us to assess whether the Board's determination is supported by reasonable, substantial, and probative evidence on the record considered as a whole, and to reverse only if the evidence compels a contrary conclusion." *Abdoulaye v. Holder*, 721 F.3d 485, 490 (7th Cir. 2013) (citation and internal quotation marks omitted). Because the Board issued its own opinion and—though agreeing with the IJ's findings, did not expressly adopt them—we review the Board's decision. *See Vahora v. Holder*, 626 F.3d 907, 912 (7th Cir. 2010); *Moab v. Gonzales*, 500 F.3d 656, 659 & n.1 (7th Cir. 2007).

We are not persuaded by the Patels' argument that the false police report filed against Naimeshkumar, the night he spent in jail, and the unspecified threats he received from his ex-wife's family compel a finding of past persecution. Though we have recognized that arrest and detention sometimes "cross the line from harassment to persecution," *Liu v. Ashcroft*, 380 F.3d 307, 313 (7th Cir. 2004), the evidence does not compel the conclusion that Naimeshkumar's former misfortunes in India cross that line. *See Mema v. Gonzales*, 474 F.3d 412, 417–18 (7th Cir. 2007) (kidnapping at gunpoint, detention, and beating did not compel finding of past persecution); *Bejko v. Gonzales*, 468 F.3d 482, 485–86 (7th Cir. 2006) (two detentions—one lasting two weeks—combined with theft of van and threat that house would be blown up did not compel finding of past persecution).

And we cannot say that the evidence compels a finding that it is more likely than not that the Patels will be persecuted if they return to India. As the Board observed, neither Naimeshkumar nor his family in India has received any threat from his ex-wife's family during the past 10 years.

The Patels note that they "submitted numerous documents addressing the serious problems with honor killings and honor crimes in India," but this evidence does not undermine the Board's conclusions. Though these news articles and State Department reports establish that honor killings occur in India, they do not demonstrate that it is more likely than not that *the Patels* will be harmed if they return. *See Krishnapillai v. Holder*, 563 F.3d 606, 619 (7th Cir. 2009); *Rashiah v. Ashcroft*, 388 F.3d 1126, 1133 (7th Cir. 2004).

Finally, the Patels assert that they are entitled to relief under the CAT, but they give us no reason to conclude that they have met their burden of showing that, if returned to India, they will more likely than not be tortured by, or with the acquiescence of, the Indian government. *See Bitsin*, 719 F.3d at 630–31.

Accordingly, the petition for review is DISMISSED with respect to the claim for asylum and DENIED with respect to the claims for withholding of removal and CAT relief.