In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-1036

OTGONBAATAR TSEGMED,

*Petitioner*,

*v.*

JEFFERSON B. SESSIONS III, Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A089-272-651.

ARGUED FEBRUARY 8, 2017 — DECIDED JUNE 15, 2017

Before WOOD, *Chief Judge*, FLAUM, *Circuit Judge*, and CONLEY, *District Judge*.*

WOOD, *Chief Judge*. Otgonbaatar Tsegmed, a citizen of Mongolia, overstayed a non-immigrant visa and has been living in the United States since 2004. He came to the attention

---

* Of the Western District of Wisconsin, sitting by designation.

of the Department of Homeland Security in 2008, after his second arrest for Driving Under the Influence in Illinois. The government placed him in removal proceedings. He conceded that he was removable, but he filed an application with the immigration court in July 2008 seeking asylum, withholding of removal, and protection under the Convention Against Torture (CAT). The Immigration Judge (IJ) denied his application and ordered him removed to Mongolia; the Board of Immigration Appeals (BIA) affirmed. Tsegmed now challenges those decisions. Because we lack jurisdiction to review the denial of his asylum application, and the evidence does not compel the conclusion that he is eligible for withholding or relief under the CAT, we deny his petition for review.

## I

Tsegmed is a member of the Taij ethnic group, which is reportedly descended from nobility and still privileged in Mongolia. He attended school in the Soviet Union and then became a high-ranking officer in the Mongolian military. In that position, he worked on highly-classified assignments and had knowledge of the internal workings of the governing Communist regime. But he and his close friend, Bayarbat, eventually became involved with the pro-democracy movement in Mongolia while the country was ruled by Mongolia's Communist Party. The police arrested Tsegmed and Bayarbat in 1989 while the two were distributing pro-democracy pamphlets. After the arrest, the police held Tsegmed for 72 hours, punched him in the face three times, called him names, and gave him no food. The police arrested him again in 1994, along with Bayarbat, during an election protest organized by the Democratic Party.

In 1999, Tsegmed's young son died a tragic and mysterious death, for which he blames the Mongolian government. The ambulance that Tsegmed called in the midst of his son's medical emergency never arrived, and, following his son's death, an unidentified person called and mocked Tsegmed, telling him that such things happened to members of the Democratic Party. In 2001, Bayarbat's family was murdered. The Communist Party framed Bayarbat for the murders and arrested him; he eventually died in prison. Around this time, the police brought Tsegmed in for questioning, ostensibly related to Bayarbat's arrest on murder charges. They instead interrogated him about political information that they believed Bayarbat's father had given him. The police detained him that time for 72 hours, during which they punched him in the face between four and six times. Although Tsegmed relocated to the United States in 2004, Tsegmed's brother, who remained in Mongolia, told him in 2007 that unidentified people (presumably communists) had come to him looking for his "dirty brother." A month after reporting this to Tsegmed, his brother died. The death was ruled a heart attack, but Tsegmed believes it may have been caused by something else because his brother was in good physical shape.

Tsegmed provided this information in the Form I-589 Application for Asylum and for Withholding of Removal he filed in July 2008, and in his testimony at two immigration court hearings conducted in December 2013 and January 2014. The IJ found Tsegmed credible, but the judge noted that much of his testimony lacked corroboration and therefore deserved less weight. The IJ denied relief in July 2014, and the BIA affirmed in December 2015. They rejected Tsegmed's asylum application because he did not meet any exception to the one-

year filing deadline. See 8 U.S.C. § 1158(a)(2)(B). The IJ, seconded by the Board, denied withholding of removal and protection under CAT on the merits, finding that the harm that Tsegmed alleged on account of his membership in the Democratic Party was not serious enough to qualify as "persecution," and that Tsegmed had failed to establish that it was more likely than not that he would be tortured upon return. Tsegmed has petitioned us for review of the BIA's decision.

Because the IJ denied the application and the BIA affirmed with a written opinion, we review both decisions. *N.L.A. v. Holder*, 744 F.3d 425, 430 (7th Cir. 2014). We consider legal conclusions *de novo*, and we review factual issues under the substantial evidence standard, "which requires us to assess whether the Board's determination is supported by reasonable, substantial, and probative evidence on the record considered as a whole and to reverse only if the evidence compels a contrary conclusion." *Abdoulaye v. Holder*, 721 F.3d 485, 490 (7th Cir. 2013) (internal citations omitted).

## II

### A

Although Tsegmed challenges the BIA's and IJ's determinations that he did not meet any exception to the one-year filing deadline for asylum, we lack jurisdiction to reconsider the Board's finding. The statute requires someone seeking asylum to apply for asylum within one year after entering the United States. 8 U.S.C. § 1158(a)(2)(B). That rule can be relaxed if the applicant can demonstrate "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within [one year]."

§ 1158(a)(2)(D). Section 1158(a)(3) further specifies that no court has jurisdiction to review the determination about the timeliness of the application or whether changed or extraordinary circumstances excuse a late filing. Nonetheless, we retain the authority to review "constitutional claims or questions of law related to the timely filing of an asylum application." *Bitsin v. Holder*, 719 F.3d 619, 625 (7th Cir. 2013) (citing 8 U.S.C. § 1252(a)(2)(D)). "We have interpreted this exception to apply 'to strictly legal controversies,' by which we 'mean[ ] that the parties contest a legal issue, and that the alien wins if the law provides what he says it does and loses if it provides what the agency says it does.'" *Id*. at 625–26 (quoting *Restrepo v. Holder*, 610 F.3d 962, 965 (7th Cir. 2010)).

Tsegmed contends that he has shown just such an error of law, because (in his view) the evidence of a material change of circumstances in Mongolia is so strong that a contrary conclusion is inconsistent with the statute. But we rejected exactly this method of showing "material changes" in *Viracacha v. Mukasey*, 518 F.3d 511, 514–15 (7th Cir. 2008), and "extraordinary circumstances" in *Bitsin*, 719 F.3d at 626. Making a determination about either "material changes" or "extraordinary circumstances" requires this court only "to apply a legal standard to a given set of facts." *Bitsin*, 719 F.3d at 626. This "does not raise a question of law, and [] therefore does not fall within § 1252's exception to the jurisdictional bar of § 1158." *Id*. at 627. Because Tsegmed does not present any constitutional claims or questions of law, we lack jurisdiction to consider the denial of his asylum application.

B

Two other forms of relief are unaffected by the one-year rule: withholding of removal, and relief under the CAT. Tsegmed seeks both.

An alien is entitled to withholding of removal if his "life or freedom would be threatened in [the home] country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Bitsin*, 719 F.3d at 628. "A threat to life or freedom is synonymous with persecution, which this Circuit defines as 'detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, torture, behavior that threatens the same, and non-life-threatening behavior such as torture and economic deprivation if the resulting conditions are sufficiently severe.'" *Halim v. Holder*, 755 F.3d 506, 511–12 (7th Cir. 2014) (quoting *Yi Xian Chen v. Holder*, 705 F.3d 624, 629 (7th Cir. 2013)). "Persecution involves, we suggest, the use of *significant* physical force against a person's body, or the infliction of comparable physical harm without direct application of force (locking a person in a cell and starving him would be an example), or nonphysical harm of equal gravity" such as refusing to allow a person to practice his religion or a credible threat to inflict grave physical harm. *Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011).

If an applicant establishes that he has suffered past persecution, he is entitled to a rebuttable presumption of future persecution on the same basis. 8 C.F.R. § 1208.16(b)(1). If he cannot establish past persecution, he still may be entitled to relief if he can demonstrate a "clear probability" of future persecution, meaning that it is more likely than not that he would

be subject to persecution if he were returned. *Halim*, 755 F.3d at 512. The "clear probability" standard for withholding is more stringent than the "well-founded fear of future persecution" standard for asylum applications. *Prela v. Ashcroft*, 394 F.3d 515, 519 (7th Cir. 2005).

Tsegmed argues that his past harms are properly characterized as persecution on account of his Taij ethnicity, his membership in the Democratic Party, and his unique position in the military. He presents no arguments or evidence related to his ethnicity or his military position, however, and so we cannot rely on either of those grounds. This leaves his argument that he was persecuted on account of his membership in the Democratic Party (that is, on the basis of his political opinion or membership in a particular social group).

If we were reviewing his petition as a matter of first impression, we might have come to a different conclusion. But we may reverse the BIA's determination only if we are compelled by the evidence to conclude that the agency erred. *Dandan v. Ashcroft*, 339 F.3d 567, 572 (7th Cir. 2003). The IJ and BIA found insufficient evidence to support the contention that Tsegmed's son and brother were murdered in 1999 and 2007, respectively. They also ruled that Tsegmed could not rely on "derivative persecution" of Bayarbat, as he had not alleged that Bayarbat had been framed in order to persecute Tsegmed. See *Zhou Ji Ni v. Holder*, 635 F.3d 1014, 1018 (7th Cir. 2011). While Tsegmed's story is a deeply troubling one, even with these qualifications, we cannot say that the Board's findings were tainted by legal error or a lack of support in the record.

Tsegmed's petition describes events that are reminiscent of other cases in which we have affirmed findings of past persecution. See, *e.g.*, *Vaduva v. INS*, 131 F.3d 689, 690 (7th Cir. 1997)

(finding that the BIA reasonably concluded that the petitioner suffered past persecution based on being beaten up by strangers warning him about political activity, but affirming denial of asylum based on the lack of a well-founded fear of future persecution). His claims of arrest, assault, and detention without food on account of his political party membership and activity depict more than "mere" harassment (a disturbingly vague concept). See *Stanojkova*, 645 F.3d at 948. But we also have affirmed findings that similar physical harms did not warrant a finding of past persecution. See, *e.g.*, *Sirbu v. Holder*, 718 F.3d 655, 659 n.3 (7th Cir. 2013) (listing cases affirming findings of no past persecution). As we have previously recognized, our past-persecution cases are "all over the lot." *Stanojkova*, 645 F.3d at 947. That is why both Tsegmed and the government "are able to cite cases that support their position; [the citations] cancel each other out." *Id.* "In the close cases, where a reasonable trier of fact could make a decision either way, we should be able to defer to the judgment of the immigration judges and the Board." *Sirbu*, 718 F.3d at 660. That principle guides our decision to accept the Board's conclusion that Tsegmed did not manage to show past persecution.

Because he has not established past persecution, Tsegmed has the burden of demonstrating a clear probability that he will be persecuted in the future. Although the BIA did not reach this issue, the IJ found that he had not met his burden. The IJ concluded that although Tsegmed had a subjectively genuine fear of persecution if he is sent back to Mongolia, that fear is not objectively reasonable. The Democratic Party controls the presidency and a plurality of the Mongolian parliament. The U.S. State Department reports that there are no official political prisoners or detainees in Mongolia. U.S. Dep't

of State, *Mongolia 2015 Human Rights Report*, https://www.state.gov/documents/organization/252995.pdf. The IJ noted that there was no evidence that the Communist Party retains the ability to threaten Tsegmed, and that there was insufficient evidence that the party would be motivated to target an opponent who had not been politically active for a long time.

Nothing in the record requires us to conclude that Tsegmed faces a clear probability of future persecution. While Tsegmed argues that he had a "well-founded fear of future persecution" and that he faces a "reasonable possibility of future persecution" if he returns, that is not what he needs to show for withholding of removal. See *Prela*, 394 F.3d at 519. Showing a "well-founded fear" or "reasonable possibility" of persecution is a far cry from establishing that future persecution is "more likely than not."

C

Finally, Tsegmed urges that he has demonstrated that he qualifies for relief under the CAT, which requires an applicant to show that it is more likely than not that he will be tortured if returned to the country in question. 8 C.F.R. § 1208.16; *Bitsin*, 719 F.3d at 631. Torture is defined as "any act by which severe pain or suffering[ ] … is intentionally inflicted on a person … when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

But Tsegmed presents no arguments in support of this claim. He says only that "the evidence overwhelmingly established that he met his burden for withholding of removal and

CAT as well." This is not sufficient to preserve his claim for our review. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). But even if it were, the evidence we already have reviewed shows that the Board was entitled to find that Tsegmed has not shown that it is more likely than not he will be tortured if returned to Mongolia.

His petition for review is DENIED.