NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 15, 2017[*]
Decided January 29, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 17-1105

| | |
|---|---|
| JOSE ANGEL HERNANDEZ-JIMENEZ, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A205 829 961 |
| JEFFERSON B. SESSIONS III, Attorney General of the United States, *Respondent*. | |

**O R D E R**

Jose Angel Hernandez-Jimenez, a 32-year-old Mexican citizen, petitions for review of an order of the Board of Immigration Appeals denying him withholding of removal. The Board determined that Hernandez had not shown a clear probability that he would be persecuted on any ground recognized by the governing law. The Board also found that he did not show that he was unable safely and reasonably relocate to

---

[*] The case was set for oral argument on November 15, but the parties have agreed to submit the case for decision on the briefs, and we have no reason to direct otherwise. See FED. R. APP. P. 34(f).

another part of Mexico. Because both determinations are supported by substantial evidence, we deny the petition for review.

In 2002 Hernandez left his hometown of Emilio Carranza, in the Mexican state of Veracruz, which runs along the central section of Mexico's Gulf Coast, and entered the United States without authorization. It appears that he did well in this country, as he now owns two electronics repair businesses in Indiana.

Nonetheless, his unauthorized status eventually caught up with him. The government began removal proceedings in 2013, charging Hernandez as an alien present in the United States without being admitted or paroled, see 8 U.S.C. § 1182(a)(6)(A)(i). He conceded removability but applied for asylum under 8 U.S.C. § 1158(b)(1)(A), withholding of removal under 8 U.S.C. § 1231(b)(3)(A), and protection under the Convention Against Torture ("CAT") (8 C.F.R. § 1208.16-1208.18).

At a hearing before an immigration judge ("IJ"), Hernandez testified that he feared persecution if he were to be returned to Emilio Carranza, because gang or cartel members had decapitated his relative, Carlos, after trying to extort money from Carlos. Hernandez's precise degree of kinship with the victim was unclear, however, and Hernandez's other evidence corroborating the killing said nothing about extortion. He also submitted letters from his stepsister and aunt about phone calls they received from gang members demanding money.

Hernandez acknowledged that his stepsister had relocated to another part of Mexico and has not experienced any violence in her new home, although she does receive threatening phone calls. Similarly, an aunt who owns a grocery store in Emilio Carranza has not been harmed, perhaps because she has been making protection payments of around $100 a week. Hernandez averred that if he went back to Mexico, gangs across the country would know that he owned businesses in the United States, because he has used Facebook to post advertisements. He had no evidence, however, that gang members had ever directly asked his family or friends about him.

Hernandez further testified that it would be difficult to open a business in another part of Mexico because Emilio Carranza is the only place there that he knows, startup and moving costs are high, and gangs extort people everywhere in Mexico. He predicted that he would be recognized in Mexico as someone who has spent a lot of time in the United States because he dresses differently from other Mexicans and speaks Spanish with an accent. In support, he submitted letters from various family members and reports opining that extortion and violence by gangs and cartels is widespread in

Mexico, and that deportees to Mexico are often preyed upon by criminals. Also, the United States had recently issued a crime-related travel warning to its citizens for many (though not all) regions in Mexico.

At the hearing, the IJ issued an oral decision denying all forms of relief. To start, the IJ found the asylum claim time-barred under 8 U.S.C. § 1158(a)(2)(B), (D). Still, the IJ alternatively considered the merits of the asylum claim and concluded that Hernandez had not shown that the treatment he feared would be based on his membership in a cognizable social group.

In any event, the IJ determined, Hernandez had not established past persecution or a well-founded fear of future persecution by gangs in Mexico, and he otherwise had failed to meet his burden of showing that he could not safely and reasonably relocate to a different part of Mexico. Finally, because Hernandez did not establish the required likelihood of persecution for asylum, the IJ concluded that he also did not qualify for withholding of removal or CAT relief, which require a higher degree of certainty.

The Board of Immigration Appeals affirmed, offering its own analysis to supplement the IJ's. The Board first confirmed that the asylum claim was time-barred. In the alternative, it rejected Hernandez's asylum claim on its merits: he had not established past persecution or a well-founded fear that he would be persecuted on any ground listed in the statute, and any subjective fear that he would be recognized and singled out for extortion or violence so severe as to amount to persecution was speculative. And, said the Board, Hernandez did not show that relocation would be unreasonable; indeed, some family members had moved away from his hometown and since then had avoided extortion and violence. Finally, the Board agreed with the IJ that since Hernandez did not establish the well-founded fear of persecution needed to obtain asylum, he necessarily could not satisfy the higher likelihood of persecution required for CAT relief or withholding of removal.

In this court Hernandez challenges only the denial of his request for statutory withholding of removal. Withholding is sometimes available when, for equitable or procedural reasons, asylum is not. Like asylum, withholding is a safeguard against persecution based on a protected characteristic—in Hernandez's case, membership in a "particular social group." 8 C.F.R. § 1208.16(b).

Withholding requires not just a well-founded fear of persecution, but a "clear probability" of persecution. *I.N.S. v. Stevic*, 467 U.S. 407, 429 (1984). This means that persecution based on a protected ground must be "more likely than not." 8 C.F.R.

§ 1208.16(b)(2)(ii). We must uphold the Board's denial of withholding unless it is not supported by substantial evidence and the record compels a contrary conclusion. *Bitsin v. Holder*, 719 F.3d 619, 628 (7th Cir. 2013) (citing *INS v. Elias–Zacarias*, 502 U.S. 478, 481 (1992)).

Nothing in the record here casts the requisite doubt on the Board's determination that Hernandez did not establish a clear probability that he will be persecuted if he returns to Mexico. Hernandez argues that, based on the evidence that gangs have targeted some members of his family in recent years, it is more likely than not that he too will be persecuted. But, although he testified that his relative Carlos was murdered in April 2015 "because he didn't pay the money" to one of Mexico's gangs, Hernandez did not offer any specific reason why Carlos was targeted for extortion or why the rest of his extended family would likely be targeted by the same gang members.

Hernandez also testified that some family members received extortionist threats. He submitted one letter from a cousin, Efren Guerra, which says criminals demanded money from Guerra and Hernandez's aunt and threatened to "follow her family." Hernandez does not elaborate on whether these threats have been carried out in any way. On this record it was reasonable for the Board to find that this information, without more, did not convey a "credible threat[]" of extortion, "imminent death," or "grave physical harm" to Hernandez. *N.L.A. v. Holder*, 744 F.3d 425, 431 (7th Cir. 2014). The evidence "does not require a reasonable factfinder" to disagree with the Board. *Bitsin*, 719 F.3d at 630; *see Orellana-Arias v. Sessions*, 865 F.3d 476, 488 (7th Cir. 2017); *Lozano–Zuniga v. Lynch*, 832 F.3d 822, 828–30 (7th Cir. 2016).

Likewise, Hernandez has failed to establish that he could not safely and reasonably relocate to another region of Mexico. See 8 C.F.R. § 1208.16(b)(2). To obtain withholding, applicants who have not suffered past persecution must prove either that they cannot avoid future persecution by relocating to another part of the proposed country of removal, or else that relocation is otherwise unreasonable. 8 C.F.R. § 1208.16(b)(2); *Oryakhil v. Mukasey*, 528 F.3d 993, 998 (7th Cir. 2008). The IJ and Board can consider many factors bearing on reasonableness, such as "whether the applicant would face other serious harm," and "social and cultural constraints, such as age, gender, health and social and familial ties." 8 C.F.R. § 1208.16(b)(3). We must uphold the immigration tribunal's determination on internal relocation unless we are "compelled to disagree" with the decision because it was not supported by substantial evidence. *Oryakhil*, 528 F.3d at 1000.

No such weakness taints the Board's relocation determination here. It expressly based its decision on Hernandez's testimony that some family members relocated and had no further confrontations with gang members. Moreover, on this point the Board stated its agreement with the IJ, who acknowledged the difficulty of starting a business in a new town but nonetheless concluded that relocation within Mexico was feasible. The record does not compel a contrary conclusion. *Cf. Reyes-Mendez v. Lynch*, 629 F. App'x 757 (7th Cir. 2015) (affirming Board's determination that petitioner could safely and reasonably relocate from town in Veracruz to another part of Mexico to avoid threats by gangs even though he would be far from family).

The petition for review is DENIED.