# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-2593

FERAS ALI JABR,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A094 998 344

ARGUED DECEMBER 7, 2012—DECIDED APRIL 2, 2013

Before POSNER, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* For over two years, members of the Palestinian Islamic Jihad ("PIJ"), an organization that violently opposes the existence of Israel, tried to recruit Petitioner Feras Ali Jabr to join their group. Jabr resisted their efforts because he is a member of Fatah, a political party that, at least according to Jabr, is more open to cooperation with Israel. Jabr's resistance left the PIJ frustrated and so its members harassed him, beat him,

and labeled him a traitor to their cause. After surviving a brutal attack at the hands of the PIJ in 2006, Jabr fled the West Bank and headed for the United States. Within a year of arriving in the United States, Jabr filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. Jabr claimed that he feared returning to Palestine because the same individuals associated with the PIJ that hurt him before will attack him again. The immigration judge ("IJ") denied his application, the Board of Immigration Appeals ("BIA" or the "Board") affirmed the denial of relief, and Jabr petitioned this court for review. Because we find that the IJ and BIA overlooked material evidence demonstrating that Jabr suffered past persecution on account of his political opinion, we grant the petition for review and remand the case for further proceedings.

## I. BACKGROUND

Petitioner Feras Ali Jabr, his wife, and two of his children are natives of Nablus, a city located in the West Bank. Before moving to the United States, Jabr worked in the maintenance department at Najah National University in Nablus. Unbeknownst to Jabr, the PIJ was using the university as a breeding ground for recruitment. The PIJ is an avowed terrorist organization that rejects any diplomatic efforts with Israel and has declared a mission to liberate Palestine through violence.[1]

---

[1] The United States designated the PIJ a terrorist organization in 1997. *See* Holly Fletcher, Palestinian Islamic Jihad, Council on

(continued...)

Jabr is a member of Fatah, a party that supports a peaceful resolution with Israel and opposes the views of the PIJ.

Beginning in 2005, members of the PIJ began to target Jabr for recruitment. As a member of Fatah, Jabr refused to join their ranks because of their political beliefs. At first, the PIJ members called him a coward, a traitor, and an "Israeli agent" for refusing them, but they did not physically hurt him. Eventually, the PIJ's violence escalated and over the course of the next two years, Jabr was harassed and threatened, gunshots were fired at his car, and at one point, he was beaten so severely that he was hospitalized for several days. Jabr fled to the United States soon thereafter, but that did not stop the PIJ's harassment. Several of its members have frequently visited the home of Jabr's mother in search of him. During one such visit, members of the PIJ slipped a letter under her door declaring that Jabr "will never escape the punishment of God and the anger of the people." The letter further called "upon all of our people in the city of Nablus to reject and persecute this person."

In January 2007, Jabr filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). His application was not granted and the government began removal proceedings against him. At the hearing before the IJ, both

---

[1] (...continued)

Foreign Relations (Apr. 10, 2008), http://www.cfr.org/israel/palestinian-islamic-jihad/p15984 (last visited March 20, 2013).

Jabr and his mother (while on a visit to the United States) testified, and the IJ found their testimony credible and consistent. However, the IJ denied Jabr relief after concluding that he did not establish that he was persecuted on account of his political opinion, religion, or membership in a particular social group. In the IJ's view, the record showed that the PIJ was only interested in recruiting as many members as possible. Jabr appealed the IJ's decision to the BIA, and the Board dismissed his appeal. The Board agreed that, even assuming that Jabr had expressed a political opinion in support of Fatah, there was no evidence that the PIJ acted on the basis of that opinion when its members attacked him. This petition for review followed.

## II. ANALYSIS

When, as here, the decision of the Board relies on the IJ's decision, we review the IJ's decision as supplemented by the Board's own analysis. *Juarez v. Holder*, 599 F.3d 560, 564 (7th Cir. 2010). We must uphold the decision to deny Jabr relief if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *Chatta v. Mukasey*, 523 F.3d 748, 751 (7th Cir. 2008), and will reverse "only if the evidence presented by [Jabr] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

To qualify for asylum, an applicant must demonstrate that he is a "refugee," meaning one "who is unable or

unwilling to return to his country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To show that he was persecuted by the PIJ "on account of" his political opinion, membership in a particular social group, and/or religion as he claims, Jabr "must put forth direct or circumstantial evidence that the [PIJ] was motivated by these factors." *Bueso-Avila v. Holder*, 663 F.3d 934, 937 (7th Cir. 2011); *see id.* ("But it is not necessary that the persecutor be motivated primarily on account of one of the grounds in the Act; an individual may qualify for asylum if his or her persecutors have more than one motive as long as one of the motives is specified in the Immigration and Nationality Act.") (internal citation and quotation marks omitted). In certain cases, "the factual circumstances alone may constitute sufficient circumstantial evidence of a persecutor's . . . motives." *Martinez-Buendia v. Holder,* 616 F.3d 711, 715 (7th Cir. 2010) (citing *Espinosa-Cortez v. Attorney General*, 607 F.3d 101 (3d Cir. 2010) (quoting *Canales-Vargas v. Gonzales*, 441 F.3d 739, 744 (9th Cir. 2006)). This is one of those cases.

The issue here is whether Jabr sufficiently showed that the persecution he endured was on account of a statutorily protected ground. The IJ concluded that members of the PIJ were simply interested in recruiting Jabr and found nothing in the record to suggest that they beat him because of his political opinion or allegiance to the Fatah group. The Board similarly concluded that the men who attacked Jabr did not say any-

thing that would indicate they beat him on account of either an express or imputed political opinion. However, significant evidence in the record contradicts this conclusion. Jabr testified that he repeatedly made it clear to the PIJ that he would not join the organization because he disagreed with its political and religious beliefs, and the IJ found him credible. Jabr also attached several documents to his application for asylum, including a personal statement, a statement from the secretary of the Fatah movement stating that Jabr is a member, and an ominous "Explanatory Statement" issued by the Islamic Jihad that was left under his mother's door. The statement warns of "Rogue Sources of Discord" and reads as translated in the record:

> We [c]onfirm that one's behind the confusion in the region is a small fragmented deteriorating group, sold itself to an objective and private agenda, which is not concerned about the interest of any member of our people. We specify in this regard (**Feras Ali Jabr**), who is accused of being a source of disturbance to the National Security, especially in Nablus Region. He distorted the reputation [of] the Mujahideen (Resistance Fighters). He will never escape the punishment of God and the anger of the people in the short or long term. Therefore, he and his alike individuals involved with spreading rumors, whom known to us at the Intelligence and Preventive Units, has to take lessons of their alike predecessors through history. Indeed God is not unaware of their injustice and criminality. Neither [will] the people . . . forgive

their sins when the time comes to try such suspects and traitors. We call upon all of our people in the city of Nablus to reject and persecute this person. Furthermore, we demand that his family be blockaded to avoid their harm to the region as a whole.

(And the wrongdoers will indeed know their future fate.)

> Alquids Brigades, the military wing
> of the Islamic Jehad Movement

The Board found that Jabr's claim that the PIJ attacked him because of his political opinion was mere "speculation" because there was "no direct or circumstantial evidence supporting this assertion." But this letter shows otherwise. By specifically naming Jabr and his family, this letter creates an unmistakable inference that the PIJ explicitly targeted Jabr on account of his contrary political stance. He told its members he was politically opposed to the PIJ, they beat him, and then they vowed to seek revenge. The beating and sending the letter were not methods of recruitment, they were means of intimidation and punishment. As we explained in *Martinez-Buendia*, "[i]f political opposition is the reason an individual refuses to cooperate with a guerrilla group, and that individual is persecuted for his refusal to cooperate, logic dictates that the persecution is on account of the individual's political opinion." 616 F.3d at 718.

This case is factually distinguished from *INS v. Elias-Zacarias*, the seminal forced-recruitment case relied on

by the IJ and the government. In *Elias-Zacarias*, the petitioner refused to join the Guatemalan guerrilla forces because he did not want to break the law and was afraid that the government would retaliate against him for joining. The Court held that the petitioner failed to establish that he had "a 'well-founded fear' that the guerrillas will persecute him because of [his] political opinion, rather than because of his refusal to fight with them." 502 U.S. at 483 (emphasis omitted). But we have explained before that "*Elias-Zacarias* does not stand for the proposition that attempted recruitment by a guerrilla group will never constitute persecution on account of the asylum seeker's political beliefs." *Martinez-Buendia*, 616 F.3d at 716. Rather, we must "carefully consider the factual record of each case when determining whether the petitioner's fear of future persecution due to his refusing recruitment attempts constitutes persecution on account of political beliefs." *Id.*

The record in this case shows that the PIJ's harassment of Jabr was not simply to increase its numbers. Members of the Islamic Jihad clearly considered Jabr's Fatah affiliation to be in direct political opposition to theirs, warning that he would learn the "lessons of . . . alike predecessors through history," as his traitorous "sins" could not be forgiven. The text of the PIJ's letter, in conjunction with the harassment and beating that preceded it, provides the required link between his political beliefs and the motives of his attackers, and so we conclude that the circumstances of this case are closer to *Martinez-Buendia* than *Elias-Zacarias*. The petitioner in *Martinez-Buendia* claimed that members of the Rev-

olutionary Armed Forces of Columbia ("FARC") persecuted her on account of her anti-FARC political affiliation. Members of the FARC harassed her for years, kidnapped her sister, and held a gun to her head. The IJ in that case found the petitioner completely credible, but like here, denied relief on the ground that she had not established past persecution on account of her political affiliation. We reversed, concluding that "[u]nlike the record in *Elias-Zacarias*, the specific facts of this case make it clear that Martinez-Buendia politically opposed the FARC and that her political beliefs were the reason for her refusal to cooperate with the FARC." 616 F.3d at 716. We noted that "[w]hile it may be unclear whether the FARC initially targeted her to overcome her political stance, the later persecution came *as a result* of her refusal to cooperate with the FARC to advance their political agenda." *Id.* at 717 (emphasis added). The same reasoning applies here. We do not know why members of the PIJ initially targeted Jabr. But whatever their initial reason, we know that they eventually came to consider him a traitor and "source of disturbance to the National Security" after he resisted their efforts and revealed himself as a member of Fatah.

Like Martinez-Buendia, Jabr did not refuse to cooperate with the PIJ because joining them was against the law, *see Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005), or because he was afraid of retaliation by the government, *see Elias-Zacarias*, 502 U.S. at 480. He refused because he was politically opposed to the PIJ, and he directly communicated that disagreement to them. *See Martinez-Buendia*, 616 F.3d at 718. The fact

that Jabr did not hold a "notable" political position of leadership within the Fatah movement—an assertion put forth by the IJ—is of no moment. We have never held that a petitioner must occupy a leadership position within his political or social group in order to receive asylum protection. All the petitioner needs to show is that his persecutor's conduct was on account of an express or imputed political opinion, which Jabr has clearly demonstrated here.[2]

### III.  CONCLUSION

For the foregoing reasons, we GRANT the petition for review, VACATE the order of removal, and REMAND for further proceedings consistent with this opinion.

---

[2] Jabr also challenges the Board's failure to mention why he did not qualify for asylum on account of his religion. Jabr describes himself as a "moderate Muslim" and claims that he told members of the PIJ that he did not agree with their "extreme Islamic beliefs." Because we conclude that Jabr has shown that he was persecuted on account of his political opinion and has a legitimate fear of future persecution, we need not reach the question of whether he also qualifies for asylum on account of his religion.