In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2130

MINGHAI TIAN,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR.,
Attorney General of the United States,

*Respondent*.

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A088-608-599

ARGUED JANUARY 6, 2014 — DECIDED MARCH 13, 2014

Before   EASTERBROOK, WILLIAMS, and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. Minghai Tian, a 48-year old Chinese citizen who has been in the United States since 2001, petitions for the review of the decisions of an immigration judge and the Board of Immigration Appeals ("BIA" or "Board") denying him asylum, withholding of removal, and relief under the United Nations Convention Against Torture

("CAT"). Because we lack jurisdiction to review the BIA's conclusion that Tian's asylum application was time-barred, we dismiss that claim. Because Tian did not exhaust his administrative remedies with regard to his CAT claim, we deny that claim. And because Tian fails to demonstrate that he met his burden of proof for establishing his eligibility for withholding of removal, we also deny Tian's petition for review with regard to his withholding of removal claim.

## I.   Background

Tian is a native and citizen of the People's Republic of China. He was admitted to the United States in 2001 on a non-immigrant visa, as a participant in an international culinary exchange program. The visa authorized him to stay in the United States until June 1, 2001, but Tian remained in the United States beyond that date. He came to the attention of the Department of Homeland Security ("DHS") on October 4, 2007, after he was arrested for questioning during an investigation of human trafficking. The arrest resulted in no charges, but Tian was turned over to DHS and placed in removal hearings. On March 25, 2009, while the removal hearings were pending, Tian pled guilty in Nevada to drawing and passing a check without sufficient funds with intent to defraud. He was ordered to pay over $100,000 in restitution, though his sentence was suspended, and he was placed on probation for an indeterminate period not to exceed five years.

On October 16, 2008, Tian filed applications for asylum, withholding of removal, and CAT protection. In the statement attached to his applications, he asserted the following narrative: In 1989, Tian took part in demonstrations in Tianjin, China. Because the Tianjin city officials did not want

students demonstrating in Tianjin, Tian and his fellow demonstrators were offered free transportation to demonstrations in Beijing, which they accepted. Once in Beijing, Tian and Zhao Xuejin, a member of Beijing University's student governing body, delivered food and water to the protesting students. This caused Tian to be detained by the police on June 1, 1989, and held for ten days. During his ten-day detention, Tian was repeatedly assaulted by police officers, and even undressed and tied to a tree for an entire day. After he was released, the Beijing officials reported his information to Tianjin officials, and Tian had to go to the local Public Security Bureau to "report" himself regularly. Tian further asserted that he later went to Beijing University to see Zhao Xuejin, but was told that Zhao had gone to England to seek asylum. When Tian later "got in touch with [Zhao Xuejin] through some channels," Zhao told Tian that Western nations respected human rights and freedom of speech.

Tian asserted that he was demoted from the position of the manager of a hotel to that of a kitchen helper, and that his wife divorced him, both directly as the result of the persecution he suffered for his participation in the prodemocracy movement. Tian said, of his trip to the United States in 2001, that the United States was "a country [he] had looked forward to seeing for over ten years." He claimed that he had failed to timely apply for asylum in the United States because of "language barriers" and his "ignorance of U.S. laws."

At the hearing before the immigration judge, Tian stated that he did not have any documentation of his participation in the demonstration or his detention, or of subsequent medical treatment for the injuries he sustained during the deten-

tion, because he was not allowed to seek medical care for those injuries. He indicated that his siblings and parents knew he had been detained in Beijing. He testified that he remained in contact with other people who went to the Beijing demonstration, but that he is not currently in touch with those people. He also testified that he had no further problems with Chinese authorities before he left China in 2001. When asked why he submitted no documents to support his application, Tian stated that the city of Tianjin had undergone a great deal of change since he came to the United States, and that many people had changed their cell phone numbers. Because Tian, not his family, was the one who had contact with his fellow demonstrators, he claimed he was unable to locate those people now.

In the hearing, Tian also claimed that he was given a document to take to his employer, which seems to have resulted in his demotion to kitchen helper. But he admitted that he advanced to the position of cook, then head chef, prior to coming to the United States. He further testified that he does not have any documentation of his demotion, or attesting to his employment at the restaurant. Tian testified he entered the United States with a valid Chinese passport, and that he traveled here with a visa for a culinary exchange program. His stated reasons for not applying for asylum within one year of his arrival were because he "did not know much about American laws" and was "ignorant."

With regard to his arrest in 2007, Tian stated that he was pulled over for speeding, and that he was turned over to DHS, not prosecuted for any trafficking crime. With regard to the Nevada conviction for drawing and passing a check without sufficient funds, Tian testified that he gave a friend

a blank check because the friend needed to pay for utilities. He testified that he pled guilty on the advice of his attorney and that he pays $300 restitution per month.

The immigration judge issued an oral decision finding Tian removable, and denying his applications for asylum, withholding of removal, and CAT protection. The immigration judge denied the application for asylum on statutory grounds. He found that Tian had failed to show any applicable exceptions to the one-year asylum application deadline, as Tian did not allege materially changed circumstances in China, and as being too busy and not speaking sufficient English did not constitute extraordinary circumstances that would allow for an untimely application. Furthermore, the immigration judge found that the Nevada conviction was an aggravated felony that rendered Tian statutorily ineligible for asylum.

The application for withholding of removal was denied because the immigration judge found Tian not credible. The immigration judge found that Tian's story was implausible, primarily because of the lack of corroborating evidence and because Tian's life after the demonstrations and career trajectory suggested that he was a willing and successful participant in life in China, not an individual fleeing persecution. In support of this proposition, the immigration judge noted that Chinese authorities granted Tian the credentials to leave his country to visit the United States. With respect to the request for CAT protection, the immigration judge noted that the fact that Tian left China with a valid passport—and thus the implicit permission of the Chinese government— suggested he was not subject to torture in China. Accordingly, the immigration judge ordered Tian removed.

Tian's appeal brief to the BIA summarily referenced "UNCAT relief" in the Notice of Appeal section, but did not substantively argue Tian's eligibility for CAT protection. The Board thus found that the CAT issue was waived. The Board affirmed the immigration judge's denial of Tian's untimely asylum application and affirmed the immigration judge's denial of withholding of removal relief and adverse credibility determination. Tian filed a timely petition for review.

## II. Discussion

Of the three issues Tian raises in his petition, we lack jurisdiction to review the asylum claim, and we dismiss the petition as it pertains to that claim. We deny the petition for review of the CAT claim, as the issue was not properly preserved for our review. We also deny the petition for review of the withholding of removal claim.

### A. Application for Asylum

An alien must file an application for asylum within one year of arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). The burden is on the alien to establish eligibility for asylum, including the element that he timely filed the application. *Id.* Despite this requirement, an alien's asylum application may be considered "if he demonstrates … either the existence of changed circumstances which may materially affect his eligibility for asylum or extraordinary circumstances relating to the delay in filing the application within the prescribed one-year period." *Bitsin v. Holder*, 719 F.3d 619, 625 (7th Cir. 2013) (quoting language from 8 U.S.C. § 1158(a)(2)(D)) (internal quotation marks omitted). However, courts may not "review a determination regarding the timeliness of an alien's application for asylum or the existence of changed or

extraordinary circumstances to excuse his late filing," unless for "constitutional claims or questions of law related to the timely filing of an asylum application." *Id.* Tian does not ask us to adjudicate constitutional claims or questions of law relating to the timeliness of his asylum application. Instead, he asks us to review the Board's factual determination that there existed no changed or extraordinary circumstances to excuse his late filing. "We lack jurisdiction to review the Board's determination that [Tian] failed to meet any of the exceptions to the rules governing the time within which an asylum application must be filed, because that conclusion did not turn on any question of law or constitutional claim." *Almutairi v. Holder*, 722 F.3d 966, 1002 (7th Cir. 2013).

Accordingly, we dismiss Tian's petition to review the Board's decision that his asylum application is untimely, for want of jurisdiction.

### B.  CAT Protection Claim

"A failure to exhaust usually forecloses a petitioner from raising an issue in federal court that was not raised before the immigration tribunal." *Young Dong Kim v. Holder*, 737 F.3d 1181, 1187 (7th Cir. 2013) (quoting *Arobelidze v. Holder*, 653 F.3d 513, 517 (7th Cir. 2011)) (internal quotation marks omitted). Exhausting all administrative remedies available to the alien "includes the obligation first to present to the Board any arguments that lie within its power to address." *FH-T v. Holder*, 723 F.3d 833, 841 (7th Cir. 2013). We deem exhaustion necessary for appellate review because of the importance of "provid[ing] the Board an opportunity to apply its specialized knowledge and experience to the matter," which "provides us with reasoning to review." *FH-T*, 723 F.3d at 841 (quoting *Arobelidze*, 653 F.3d at 517).

We agree with the Respondent that Tian did not raise to the Board any substantive arguments for why he should receive CAT relief, and that he thus failed to exhaust the administrative remedies available to him with regard to this claim. Tian merely gestured to the existence of a potential CAT claim in an introductory section of his BIA brief, and made no arguments about the immigration judge's denial of his CAT claim. The sentence stating he had applied for "relief under the UNCAT" did not provide the Board with "an opportunity to apply its specialized knowledge and experience to the matter." *FH-T*, 723 F.3d at 841. As such, we hold that Tian failed to meet his burden of properly presenting his claim to the Board. *See, e.g.*, *El-Gazawy v. Holder*, 690 F.3d 852, 858–59 (7th Cir. 2012) (holding that an alien waived an issue presented to the Board in a form "simply too thin for the BIA to recognize it in the form the petitioner now urges us to consider"). We thus deny the CAT claim.

### C.  Withholding of Removal Claim

#### 1.  Standard of Review

"Where, as here, the BIA's decision adopts and affirms the IJ's conclusion as well as provides its own analysis, we review both decisions." *Bathula v. Holder*, 723 F.3d 889, 897 (7th Cir. 2013) (internal quotation marks and citations omitted). Our review of factual findings is for substantial evidence: "the agency's determination [to deny Tian withholding of removal] will stand if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 898 (quoting *Vahora v. Holder*, 626 F.3d 907, 912 (7th Cir. 2010)). Reversal is appropriate "only if the evidence presented by [Tian] was such that a reasonable factfinder would have to conclude that the requisite fear of per-

secution existed." *Jabr v. Holder*, 711 F.3d 835, 838 (7th Cir. 2013) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). Credibility determinations in asylum cases are also subject to the substantial evidence standard of review. *Munoz-Avila v. Holder*, 716 F.3d 976, 979 (7th Cir. 2013).

### 2. Credibility of Tian's Claim of Persecution

In order to establish eligibility for withholding of removal, the alien bears the burden of demonstrating that his "life or freedom would be threatened … because of [his] race, religion, nationality, membership in a particular social group, or political opinion" in the country to which he will be removed. 8 U.S.C. § 1231(b)(3)(A); *Firmansjah v. Gonzales*, 424 F.3d 598, 605 (7th Cir. 2005) (describing the alien's burden to establish a "clear probability" of persecution, or that it is "more likely than not" that he will be subject to persecution if returned to his native country). Persecution is defined to include "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, torture, behavior that threatens the same, and non-life-threatening behavior such as torture and economic deprivation if the resulting conditions are sufficiently severe." *Yi Xian Chen v. Holder*, 705 F.3d 624, 629 (7th Cir. 2013) (citations and internal quotation marks omitted). Tian alleges political persecution based on his involvement in supplying food and water to student demonstrators in 1989 in Beijing. His testimony alone may suffice to prove that he is a refugee if the immigration judge finds it credible, but "if the [immigration judge] finds the testimony incredible, corroborating evidence is required." *Rama v. Holder*, 607 F.3d 461, 465 (7th Cir. 2010).

We hold that Tian fails to meet the burden of establishing his eligibility for withholding of removal: he does not present us with a plausible account of his past persecution or feared future persecution in China, and he has failed to present corroborating evidence to overcome the implausibility of his testimony.

### a.  Plausibility of Tian's testimony

First, we address the government's argument that Tian waived review of the Board's determination finding implausible his claim that he was detained and beaten in China for participating in the 1989 demonstration. The government argues that Tian summarily claims that he truthfully testified about his past persecution, but does not otherwise contest the Board's finding of implausibility. We require "an argument consisting of more than a generalized assertion of error" to hold that an issue has not been waived in the briefing. *Haxhiu v. Mukasey*, 519 F.3d 685, 691 (7th Cir. 2008) (quoting *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001)).

Tian does not meet this burden in asserting the plausibility of his past persecution in China, as he articulates no cogent argument to challenge the Board's finding of implausibility. "The failure to adequately develop and support [this argument] results in waiver." *Long-Gang Lin v. Holder,* 630 F.3d 536, 543 (7th Cir. 2010). But even if he had not waived this challenge, we would agree with the agency's determination on the merits.

The immigration judge and the Board reasonably determined that Tian's claim of persecution was implausible in view of the totality of his claim. We review the immigration

judge and the Board under the deferential substantial evidence standard, meaning that we may only reverse their factual findings if the facts *compel* an opposite conclusion. *Balogun v. Ashcroft*, 374 F.3d 492, 507 (7th Cir. 2004). The record shows that Tian remained in China for more than ten years after his alleged persecution, and continued working at the same government-owned restaurant where he had worked before the demonstration without further persecution from Chinese authorities. During his time there, he was eventually promoted to head chef. Furthermore, the government even permitted him to leave China to participate in a culinary exchange program. Upon arriving in the United States, Tian did not apply for asylum for seven years, and it appears the application was inspired by his being placed in removal proceedings in the United States. These facts, combined with the absence of specific details about his mistreatment in the past, reasonably lead to the conclusion that Tian was not fleeing persecution in China when he arrived in the United States in 2001. Nor does Tian present us with any information to suspect there will be persecution in Tian's future, should he return to China. The evidence certainly does not *compel* the conclusion that Tian will be persecuted should he return there.

### b. Lack of corroborating evidence

Tian is ineligible for withholding of removal because substantial evidence supports the agency's determination that he did not provide sufficient corroborating evidence to overcome his incredible testimony, despite the availability of such evidence. As Tian is subject to the REAL ID Act, an immigration judge may require corroborating evidence, which must be presented unless it "cannot [be] reasonably

obtain[ed]." 8 U.S.C. §§ 1158(b)(1)(B)(ii), 1231(b)(3)(C). "Unless [Tian] can show that corroborating evidence was reasonably unavailable, [his] failure to produce it was fatal to [his] claims." *Raghunathan v. Holder*, 604 F.3d 371, 379 (7th Cir. 2010). We review the Board's determination that corroborating evidence was available under the substantial evidence standard, meaning that we cannot reverse a determination made by the Board unless "a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." *Id.* (quoting Pub. L. No. 109-13, § 101, 119 Stat. 231, 304 (2005)).

Tian submitted no corroborating evidence whatsoever, despite having several sources from which he could have obtained such information. He failed to submit evidence from his family, who knew about his detention and with whom he was in touch; fellow demonstrators from the 1989 demonstration, including Zhao Xuejin, apparently now living in England; or the hotel where he worked until 2001, when he left China. Tian's failure to obtain corroborating evidence and failure to offer legitimate reasons why this evidence was not available are fatal to his claims.

Because Tian does not present a credible account of his past or feared future persecution in China, and because he fails to submit corroborating evidence to overcome his incredible testimony, we deny his petition for review with regard to his withholding of removal claim.

### III. Conclusion

Tian's petition for review is DISMISSED with respect to the claim for asylum and DENIED with respect to the claims for CAT relief and withholding of removal.