NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 4, 2015[*]
Decided December 30, 2015

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-2257

| | |
|---|---|
| ZHONG LI,<br>　　*Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A087-998-980 |
| LORETTA E. LYNCH,<br>Attorney General of the United States,<br>　　*Respondent*. | |

**O R D E R**

Zhong Li, a 24-year-old Chinese citizen, asserts that he was persecuted in his home country for attending an underground Christian church. He petitions for review of the denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture. Because the record does not compel a conclusion contrary to that of the immigration judge's, we deny the petition.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Li entered the United States without permission near Hidalgo, Texas, in early 2010 and was apprehended by Border Patrol. During a subsequent credible-fear interview with an asylum officer, Li said, through an interpreter, that he fled China after police had arrested and beat him several months earlier for visiting an unsanctioned Christian church called the Church of Jesus. Li denied having been baptized, but he described himself as a Christian based on his newfound belief in God—a belief that he traced to his recent interactions with both evangelists and a neighbor who was healed of "evil spirits" with the help of a group of Christians. The asylum officer found Li's allegations credible enough to warrant further consideration, *see* 8 U.S.C. § 1225(b)(1)(B)(ii), (v), and Li was released from custody pending the removal proceedings. He then relocated to Illinois to live with a relative.

Li, through counsel, moved to change venue to Chicago. In the motion he conceded his inadmissibility, but expressed his intention to apply for asylum, withholding of removal, and protection under the Convention Against Torture, all on the basis of alleged religious persecution.

In support of his applications, Li submitted an affidavit that provided new—and sometimes conflicting—details about the persecution he alleged to have suffered in China. Li now said that around the age of ten he began attending underground Christian services with his parents and grandparents, and that in 2004 he was "water baptized" before the entire congregation. With regard to the police raid on the church, he said that many congregants had been arrested but suggested that some managed to escape. After the arrest, he added, he was detained for two days, interrogated, shocked with stun guns or electric batons, and forced to kneel on graveled ground—causing much pain and bleeding on his knees and legs. Li denied paying a bond or bribe to secure his release, but said that the open wounds on his legs became infected and required medical care on a number of occasions. Li also said that his church building was razed by the government just before he left China.

At his hearing before the immigration judge in April 2013, Li provided further details at odds with his prior accounts. For example, this time he testified that he had been baptized without water, that the church he attended was named the Housha Tang Family Church, that none of the congregants had escaped arrest during the raid, and that he had paid a fine to get released. When asked to explain these inconsistencies, Li responded that he purposefully downplayed his Christianity during his credible-fear interview on the advice of the snakehead who helped smuggle him into the country. At the hearing Li also introduced a few documents: a partially untranslated baptism

certificate, a bulletin from a church in Chicago, a letter from an elder at a church in Peoria, photographs showing the destruction of his church in China, and the State Department's 2011 Religious Freedom Report on China.[1]

The immigration judge denied Li all relief. First she found Li not credible based on his inconsistencies about important details of his story, including, but not limited to, (1) whether he attended Christian services from a young age with his family or whether he had converted to Christianity shortly before his arrest, (2) whether he was baptized and whether the baptism was performed with or without water, (3) whether his church in China was called the Church of Jesus or the Housha Tang Family Church, (4) whether all of the congregants were arrested during the church raid or whether some escaped, (5) and whether he paid a fine to secure his release from detention.

Because she found Li not credible, the immigration judge explained that the REAL ID Act, *see* 8 U.S.C. § 1158(b)(1)(B)(ii)—which governs this case—required him to corroborate the specific details of his account, and here Li had failed to do so. Li's documents did not address "the specific harm the respondent claims to have suffered due to his faith." The immigration judge added that it was reasonable to expect Li to submit letters from his family or fellow congregants to attest to his "arrest and mistreatment under interrogation." The Board of Immigration Appeals upheld the immigration judge's order.

In his petition for review, Li challenges the immigration judge's decision not to credit his confusing explanation that he initially downplayed his Christian faith to the asylum officer because he feared being returned to China. But that explanation is difficult to square with his acknowledgement that he "came to the United States to practice Christianity freely and openly," and it does not account for the inconsistencies between the 2010 affidavit and his testimony three years later before the immigration judge. In any event, Li's explanation for initially downplaying his Christian faith is not so compelling as to require a reasonable factfinder to accept it. *See Zeqiri v. Mukasey*, 529 F.3d 364, 371 (7th Cir. 2008); *Fedosseeva v. Gonzales*, 492 F.3d 840, 847 (7th Cir. 2007).

---

[1] At the outset of the hearing, the immigration judge denied the request of Li's newly hired counsel to continue the hearing so that additional documentation could be submitted in corroboration of his claims. The immigration judge denied the request, explaining that the case had been pending in Chicago for two years and she had warned Li at a prior hearing that he must be prepared to present his case. Li does not challenge this decision.

Li also argues that some of the supposed inconsistencies stemmed from the explainable omission of certain details from his credible-fear interview and affidavit. But several of the inconsistencies cannot be reconciled without also accepting Li's explanation that he intentionally misled the asylum officer about his conversion. For example, Li said in his credible-fear interview that he never had visited a Christian church prior to the month he was arrested, then later claimed to have joined the church at a young age. His explanation for how he became a Christian also changed—he initially said he was introduced to Christianity by evangelists, then said he had attended church with his family. Likewise, Li initially denied having been baptized, then said in his affidavit that he was "water baptized" years earlier, and then told the immigration judge he had been "baptized" without water. These clear contradictions are not trivial, so any one of them would have provided an adequate basis for the immigration judge's adverse credibility finding. *See Tawuo v. Lynch*, 799 F.3d 725, 727 (7th Cir. 2015). It is therefore immaterial whether Li can provide plausible explanations for some of his alleged omissions.

Further, because the immigration judge found Li incredible, it was incumbent on him to substantiate his story with credible corroborating evidence unless it could not reasonably be obtained. *See* 8 U.S.C. § 1158(b)(1)(B)(ii); *Tian v. Holder*, 745 F.3d 822, 828 (7th Cir. 2014); *Raghunathan v. Holder*, 604 F.3d 371, 379 (7th Cir. 2010). But Li provided no evidence corroborating his claim that he was arrested, beaten, and interrogated for two days due to his religious faith. Li's hearing before the immigration judge took place more than three years after his credible-fear interview; during that time he remained in communication with family members who could have potentially corroborated parts of his story, yet he failed to produce such letters at the hearing.

A showing of past persecution raises a presumption that the applicant will be persecuted in the future. In the absence of such a showing, petitioners must present "specific, detailed facts showing a good reason to fear [they] will be singled out for persecution" if they are returned. *Lin v. Holder*, 620 F.3d 807, 810 (7th Cir. 2010). Li has not met this burden. It is true that the State Department report recounts instances of persecution suffered by members of unsanctioned churches in some parts of China. The immigration judge, however, did not credit Li's testimony with respect to the exercise of his religion, and, consequently, there is no reason to believe that Chinese officials would seek out Li for retribution.

Because Li has not established that he is entitled to asylum, he necessarily cannot satisfy the more stringent standards for withholding of removal or for protection under the Convention Against Torture. *See Antia-Perea v. Holder*, 768 F.3d 647 (7th Cir. 2014).

Accordingly, the petition for review is **DENIED**.