In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 17-2920

GERSON E. ALVARENGA-FLORES,

*Petitioner*,

*v.*

JEFFERSON B. SESSIONS III, ATTORNEY
GENERAL OF THE UNITED STATES,

*Respondent*.

———————

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A206-184-822

———————

ARGUED APRIL 20, 2018 — DECIDED AUGUST 28, 2018

———————

Before SYKES and BARRETT, *Circuit Judges*, and DURKIN,
*District Judge*.[*]

BARRETT, *Circuit Judge*. Alvarenga seeks asylum, withhold-
ing of removal, and relief under the Convention Against Tor-
ture because he fears torture and persecution from gang
members if he returns to El Salvador. The immigration judge

———————

[*] Of the Northern District of Illinois, sitting by designation.

concluded that Alvarenga lacked credibility and denied him relief. Finding no clear error in the immigration judge's decision, the Board of Immigration Appeals dismissed the appeal. Substantial evidence supports the decisions of the immigration judge and the Board, and the record does not compel a contrary conclusion. We therefore deny Alvarenga's petition for review.

## I.

Gerson Eliseo Alvarenga-Flores was apprehended crossing the United States border, and he gave a "credible fear" interview while he was detained.[1] He said that he was afraid to return to El Salvador, where he is a citizen, because after witnessing the murder of a friend, he received threats from the gang members responsible. His case was referred to an immigration judge (IJ), and the Department of Homeland Security filed a Notice to Appear. It charged him with removability under the Immigration and Naturalization Act because he did not possess valid non-immigrant visas, travel documents, or immigrant visas, and he was not exempt from possessing those documents. § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). Alvarenga conceded that he was removable and applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). The IJ denied all three forms of relief based on an adverse credibility finding; he also found that Alvarenga's asylum application was time-barred.

---

[1] Petitioner moved to redact his name from our opinion. Redaction is an extraordinary measure, and petitioner has not shown that it is warranted here.

He based the adverse credibility finding on inconsistencies in Alvarenga's testimony about the two events that had prompted him to leave El Salvador for fear of persecution. One involved his escape from gang members who attacked him in a taxi; the other involved his escape from gang members who approached him on a bus.

First, the taxi: Alvarenga claimed that he and three friends were riding in a taxi that was stopped by a gang, which fired shots at the car and ultimately killed one person. He offered two different accounts of what happened. In his written statement, Alvarenga said that his friend Jose Diaz was sitting in the front passenger seat. After the attack began, Diaz exited his door and fled on foot, which distracted the gunmen and allowed the taxi to get away. In his oral testimony before the IJ, Alvarenga described events differently. He testified that no one was seated in the front—in this version, all four passengers were seated in the back. He said that Diaz, the friend who fled on foot, was sitting in the middle seat. Because everyone else stayed in the taxi, this position would have required Diaz to climb over one or more passengers to exit the car. When asked about the inconsistency in his stories, Alvarenga had no explanation for it.

Next, the bus: Alvarenga claimed that a few days after the taxi incident, gang members boarded a bus that he was riding home from school. In his written statement, Alvarenga said that the gang members—one of whom he recognized as an assailant from the taxi attack—boarded the back of the bus and initially stayed there. When the gang members started approaching Alvarenga, he jumped out of the bus door, and in the process, fell and scraped his hand. In the oral version that he gave to the IJ, events unfolded differently. He testified

that he boarded the back of the bus and the gang members got on through the front. When the assailants walked toward him, he jumped out of the back. When pressed by both the IJ and the government about the difference in his oral account, Alvarenga "testified forcefully that he got on the back of the bus and not the assailants." Again, he did not explain the discrepancy between his written and oral statements.

Because of the inconsistencies, the IJ determined that Alvarenga was not being truthful about the basis of his applications for asylum, withholding of removal, and protection under CAT. He then considered whether corroborating evidence could rehabilitate Alvarenga's testimony. Alvarenga had submitted two affidavit letters from his parents to support his story. Both letters were written in English, even though neither parent speaks English. The IJ also found the substance of the letters questionable. Alvarenga's parents lacked firsthand knowledge of the events discussed in their letters and "restate[d] things that they can only have heard from [Alvarenga]." The IJ further noted that Alvarenga's parents could have testified telephonically but did not. He concluded that the letters were entitled to no weight.

On appeal to the Board, Alvarenga argued that the inconsistencies were neither material nor related to the heart of his claim. But the Board, like the IJ, found the discrepancies sufficient to sustain an adverse credibility finding. 8 U.S.C. § 1229a(c)(4)(C) (an IJ may make a credibility determination "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim"). The Board also agreed that Alvarenga's asylum claim was statutorily barred.

In his petition for review, Alvarenga argues that the IJ and the Board erred in denying asylum, withholding of removal, and protection under CAT based on a finding of adverse credibility.[2]

## II.

When the Board adopts and supplements an IJ's decision, we review the IJ's decision along with the additional reasoning provided by the Board. *Ndonyi v. Mukasey*, 541 F.3d 702, 709 (7th Cir. 2008). We consider the decisions "under the deferential substantial evidence standard, meaning that we may only reverse their factual findings if the facts *compel* an opposite conclusion." *Tian v. Holder*, 745 F.3d 822, 828 (7th Cir. 2014). We also afford significant deference to an agency's adverse credibility determination. *Song Wang v. Keisler*, 505 F.3d 615, 620 (7th Cir. 2007) (noting that credibility determinations are only overturned under extraordinary circumstances).

We turn first to asylum. An applicant applying for asylum as a refugee must *credibly* establish a well-founded fear of persecution upon return to his home country. 8 U.S.C. § 1101(a)(42)(A); *Ahmad v. I.N.S.*, 163 F.3d 457, 460 (7th Cir. 1999). Asylum cases thus "often turn on the IJ's credibility determination; an adverse credibility finding will doom the applicant's claimed eligibility." *Musollari v. Mukasey*, 545 F.3d 505, 508–09 (7th Cir. 2008). This credibility determination assesses the claim for consistency, detail, and the inherent

---

[2] Alvarenga also argues that his due process rights were violated because he did not receive a fair hearing. But the record shows he was permitted a reasonable opportunity to present his case, and so we find this argument without merit. *See Ambati v. Reno*, 233 F.3d 1054, 1061–62 (7th Cir. 2000).

plausibility of the applicant's account. 8 U.S.C. § 1158(b)(1)(B)(iii); *see Capric v. Ashcroft*, 355 F.3d 1075, 1085 (7th Cir. 2004). And in cases like Alvarenga's, which are "governed by the REAL ID Act, the IJ's authority is even greater. … [IJs] 'can base an adverse credibility finding on any inconsistency, whether it goes to the heart of the applicant's claim or not.'" *Tawuo v. Lynch*, 799 F.3d 725, 728–29 (7th Cir. 2015) (quoting *Georgieva v. Holder*, 751 F.3d 514, 519 (7th Cir. 2014)); *see* § 1158(b)(1)(B)(iii).

The IJ's adverse credibility finding here centered on the inconsistencies in Alvarenga's written and oral statements about the taxi and bus incidents. These two encounters with gang members were crucial to Alvarenga's claim that gang members were likely to torture him if he returned to El Salvador, yet he could not keep the facts straight with respect to either one. Alvarenga offers several explanations for the differences: he does not speak English, his statement was prepared telephonically while he was detained, and he was sent only an English copy to sign.

But the IJ considered and rejected these arguments. He stated that he did not "for a second, believe that [the discrepancies were] based on [a] difficulty in communication." In fact—as the IJ and Board noted—when confronted with his discrepancies, Alvarenga had no explanation. And when offered the chance to corroborate his testimony, he provided more dubious evidence: letters in English from his non-English-speaking parents. *See Georgieva*, 751 F.3d at 519 (stating that if the IJ finds an applicant's story incredible, the applicant

must provide corroborating evidence and explain the discrepancies).

Under our deferential standard of review, "[w]e need only assure ourselves that the IJ, and ultimately the Board, provided specific reasons based in the evidence for their credibility determinations." *Tawuo*, 799 F.3d at 728–29. They did so here. The evidence shows that Alvarenga provided conflicting accounts about what happened during the taxi and bus incidents.[3] He also failed to offer convincing corroborating evidence or explain the discrepancies. We thus conclude that substantial evidence supports the IJ's and Board's decisions.[4]

## III.

Because the burden for securing asylum is lower than the burden for securing either withholding of removal or relief under CAT, *see Capric*, 355 F.3d at 1095; *Dandan v. Ashcroft*, 339 F.3d 567, 575 n.7 (7th Cir. 2003), Alvarenga's remaining two claims must also fail, *see Musollari*, 545 F.3d at 508 n.2. Accordingly, we DENY the petition for review.

---

[3] The dissent acknowledges the discrepancies in Alvarenga's story but finds his account more plausible than the IJ did. That, however, is not enough. "We will not overturn adverse credibility determinations simply because the evidence might support an alternate finding." *Kllokoqi v. Gonzales*, 439 F.3d 336, 341 (7th Cir. 2005). The IJ's adverse credibility determination here was supported by the record, and we do not find the "extraordinary circumstances" necessary to overturn that finding. *Krishnapillai v. Holder*, 563 F.3d 606, 617 (7th Cir. 2009).

[4] Alvarenga's asylum claim also fails because it is time-barred. A person must apply for asylum within one year of his or her arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Alvarenga filed for asylum three and a half years after being detained and failed to show changed or extraordinary circumstances. 8 U.S.C. § 1158(a)(2)(D).

DURKIN, *District Judge*, concurring in part and dissenting in part. I agree with the majority that Alvarenga's asylum claim is time-barred under 8 U.S.C. § 1158(a)(2). But Alvarenga seeks two other forms of relief: withholding of removal and protection under the CAT. The IJ did not reach the merits of Alvarenga's withholding of removal and CAT claims because he found that Alvarenga lacked credibility. I disagree with the majority's conclusion that substantial evidence supports the IJ's adverse credibility finding.

As the majority explains, we give substantial deference to an agency's adverse credibility determination. *Song Wang*, 505 F.3d at 620. Credibility determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1229a(c)(4)(C). "That said, the inconsistencies spotted by the IJ should not be trivial." *Tawuo*, 799 F.3d at 727. An IJ "must still 'distinguish between inconsistencies … that are material and those that are not.'" *Cojocari v. Sessions*, 863 F.3d 616, 620 (7th Cir. 2017) (quoting *Krishnapillai v. Holder*, 563 F.3d 606, 617 (7th Cir. 2009)). This Court has "'reversed when the discrepancies were minor, when they concerned irrelevant details in light of the [applicant]'s broader claim of persecution, or when the [IJ] failed to consider the [applicant]'s reasonable explanations offered for a discrepancy.'" *Id.* (quoting *Tarraf v. Gonzales*, 495 F.3d 525, 532 (7th Cir. 2007)); *see, e.g., Chun Sui Yuan v. Lynch*, 827 F.3d 648, 654-56 (7th Cir. 2016) (overturning adverse credibility determination where inconsistences were trivial in the context of the applicant's "larger claim").

Alvarenga's larger story has remained the same since his credible fear interview in November 2013. During that interview, in his November 2016 personal statement in support of

his application, and during his April 2017 testimony before the IJ, Alvarenga described the following:

On Sunday, March 10, 2013, Alvarenga and his friends were traveling by taxi to celebrate the birthday of a friend from the university Alvarenga attended in El Salvador. At one point, the taxi slowed down, and armed men approached and ordered Alvarenga and his friends to get out. When Alvarenga and his friends did not cooperate, the gunmen began shooting. At one point, Alvarenga's friend Diaz got out of the car, distracting the gunmen, and the taxi managed to get away. Alvarenga reported the shooting to the police and requested protection, but the police said they could not help.

On the Wednesday following the taxi incident, Alvarenga and his parents began receiving calls from men identifying themselves as part of a gang. These men threatened to kill Alvarenga as a witness to the taxi attack unless Alvarenga paid them significant amounts of money. Two days later, on the Friday following the taxi incident, Alvarenga took the bus home from his university. At some point, several gang members, including one of the assailants from the taxi attack, got on the bus. After recognizing the assailant, Alvarenga jumped off the bus, hurting his hand. The gang members chased Alvarenga, but he escaped in a taxi. After the bus incident, Alvarenga and his parents decided he should withdraw from school, and he went into hiding. He left El Salvador several months later, and he arrived in the United States in August 2013.

The IJ never acknowledged that Alvarenga's "larger claim," *Chun Sui Yuan*, 827 F.3d at 654, remained consistent over the course of three and a half years. Instead, the IJ focused on two discrepancies between Alvarenga's personal

statement and his testimony, both of which involved the positions of various actors during the taxi and bus incidents. The first discrepancy concerned whether Alvarenga's friend Diaz was seated in the front passenger seat or the middle of the back seat during the taxi incident. The second concerned which end of the bus the gang members boarded during the bus incident. I view these inconsistencies as trivial when considered in relation to Alvarenga's broader story. *See, e.g., id.* ("whether the police or an ambulance took [the applicant] to the hospital is irrelevant in light of his larger claim that he was beaten and slashed by agents from the birth-control office, prompting his brother and mother to call the police for help").

The majority says the first discrepancy makes Alvarenga's story implausible because Diaz's position in the middle of the back seat as described in Alvarenga's testimony "would have required Diaz to climb over one or more passengers to exit the car." But as Alvarenga explained in both his personal statement and his testimony, one of the gang members pulled another of Alvarenga's friends out of the car and shot him.[1] Alvarenga testified that Diaz sat directly beside the friend who was pulled out of the taxi, which explains how Diaz exited without climbing over anyone. The fact that Alvarenga provided "greater detail" in his "live testimony" than he did in his personal statement "is not a reason to reject [his] testimony as not credible." *See id.* at 655.

It is true that Alvarenga's personal statement explained that Diaz "got out of the front passenger seat," and Alvarenga

---

[1] Alvarenga's credible fear interview was more summary in nature and omitted this fact; it also said nothing about Diaz's position in the taxi.

testified that Diaz exited from the back. But this is not an event about which Alvarenga can be expected to have perfect recall. According to his testimony, the gunmen fired shots directly into the taxi where Alvarenga was sitting. He told the IJ: "when I heard that first shot, inside the taxi, where we were, I closed my eyes, I lowered my head and I didn't know anything of what was going on." This testimony makes it less surprising that Alvarenga got mixed up about the precise circumstances of Diaz's exit four years after the fact.

The second inconsistency likewise is less suspicious when considered in the context of Alvarenga's other testimony. Alvarenga testified that the gang members boarded the bus from the front, and he explained in his personal statement and his credible fear interview that they boarded from the back. But as Alvarenga explained during his testimony, he had his "headphones in listening to music" at the time the gang members boarded the bus, and he noticed them "suddenly." He further testified that at least one gang member approached him from "behind."

Viewed in fuller context, I believe the IJ placed "great significance in small variations" among Alvarenga's personal statement and his more detailed testimony. *See Cojocari*, 863 F.3d at 624. The IJ's focus on these small variations "call[s] the [IJ's] overall analysis into question." *Id.* at 626.

I also find the IJ's discussion of Alvarenga's explanations problematic. The IJ said Alvarenga offered "no explanation" for the two inconsistencies. The Board likewise emphasized the lack of "explanation." But Alvarenga's testimony described above offered at least a partial explanation for both inconsistencies. He also offered an explanation when the IJ questioned him directly: Alvarenga said that he gave his

personal statement over the phone and through an inter-
preter. His attorney argued at closing that "the inconsisten-
cies may be explained by the exigencies of trying to work in a
different language by phone, with a detained client." The IJ
said he did not believe this explanation. But he did not elabo-
rate.

This Court has made clear that "reasonable explanations
for discrepancies must be considered." *Chun Sui Yuan*, 827
F.3d at 653. Here, the IJ incorrectly stated that Alvarenga of-
fered "no explanation" and perfunctorily dismissed counsel's
argument. This was insufficient consideration.

Finally, I believe the IJ improperly discounted Alvarenga's
corroborating evidence. *See Cojocari*, 863 F.3d at 627-30 (over-
turning adverse credibility finding in part because IJ gave in-
sufficient consideration to corroborating evidence). In partic-
ular, the IJ should not have so quickly rejected Alvarenga's
parents' affidavits corroborating the facts of the taxi and bus
incidents. The majority describes these affidavits as "dubious
evidence" because they are "letters in English from his non-
English-speaking parents." The IJ similarly gave "no weight"
to these affidavits because they are in English. But as Al-
varenga's counsel explained to the IJ, these affidavits were
prepared through counsel's office. After counsel "went
through the statements with [Alvarenga's parents] … in Span-
ish" using an interpreter, counsel sent the affidavits to Al-
varenga's parents for their signatures. In light of these repre-
sentations by counsel, the fact that the letters were in English
did not justify wholly discounting them.

The IJ noted that Alvarenga's parents "lacked firsthand
knowledge" of many of the events described. But the IJ ig-
nored significant aspects of the affidavits about which

Alvarenga's parents do have firsthand knowledge. Alvarenga's mother's affidavit describes calls to the "home phone threatening that if we didn't cooperate with the gang members they would not rest until [Alvarenga] was murdered" and demanding "first five thousand dollars, then ten thousand dollars." She says she has received "over 200 calls to [the] home phone." And she verifies that she "made [Alvarenga] stay inside [the] home" after the bus incident. She is "afraid that if [Alvarenga] returns to El Salvador, he will lose his life." Alvarenga's father similarly describes "constant threats on [his] cell phone" and calls to the home phone "asking for large amounts of money." He states: "I know [Alvarenga] will be killed if he returns to El Salvador." These aspects of the affidavits should not have gone unacknowledged.

The IJ also failed to address the further corroboration Alvarenga offered for his story. This evidence included university records supporting Alvarenga's testimony that he studied engineering and played soccer from 2010 through mid-2013. Alvarenga also submitted government reports and news articles describing widespread corruption and gang activity in El Salvador. These sources explain that "extortion is a very common crime in El Salvador," and they document the inadequate governmental protection offered to gang crime witnesses. This Court recently described these unfortunate realities in El Salvador:

> The gangs use violence to exercise an enormous degree of social control over their territories, dictating where residents can walk, whom they can talk to, what they can wear, and when they must be inside their homes…. They extort millions of dollars from local businesses through

> threats of violence, and they are largely respon-
> sible for El Salvador's homicide rate—one of the
> highest in the world.

*W.G.A. v. Sessions*, No. 16-4193, 2018 WL 3979276, at *1 (7th Cir. Aug. 21, 2018).

The IJ found it "implausible … as a matter of how the world works" that gang members would try to extort Alvarenga and his parents three days after Alvarenga witnessed a shooting, and that gang members would then track down Alvarenga on a bus returning from his university. This may not be the way the world typically works in the United States. But Alvarenga's sources support that it is the way the world often works in El Salvador (as this Court has recently acknowledged).

For these reasons, I would grant Alvarenga's petition for review and reverse the IJ's adverse credibility finding. Because the Board and IJ did not decide whether, if credible, Alvarenga's testimony met his burden of proof, I would remand for further consideration of the merits of Alvarenga's withholding of removal and CAT claims. *See, e.g., Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (federal courts may not pass judgment on an issue the Board and IJ did not address).