In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-3205

NADIIA BOHDANIVNA CHUCHMAN,

*Petitioner*,

*v.*

MERRICK B. GARLAND,
Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the Board of Immigration Appeals.
No. A206-590-765.

ARGUED JULY 7, 2021 — DECIDED JULY 12, 2021

Before EASTERBROOK, KANNE, and KIRSCH, *Circuit Judges*.

KANNE, *Circuit Judge*. Nadiia Chuchman, a citizen of Ukraine, appeals the denial of her application for asylum based on political opinion. She maintains that the Ukrainian government persecuted her nearly a decade ago for her political activity in opposing the former president. She primarily argues that the Immigration Judge and the Board of Immigration Appeals erred in finding that she had not experienced past persecution after government actors beat her severely,

detained her for a day, and pressured her university's dean to expel her if she remained politically active. She also maintains that they ignored evidence of ongoing corruption in Ukraine when finding that her political party's rise to power meant she was unlikely to be persecuted in the future. Because substantial evidence supports the Board's conclusion that Chuchman's experience in Ukraine did not rise to the level of persecution, and because she failed to present compelling evidence that the new Ukrainian government would persecute her if she returned, we deny the petition for review.

## I. BACKGROUND

In November 2010, Chuchman, then a seventeen-year-old university student, joined the Ukrainian Democratic Alliance for Reform (UDAR), a political party that opposed then-president Viktor Yanukovych. (Yanukovych would later be removed from office in the 2014 Ukrainian Revolution.) As a party member, she participated in meetings and protests, spoke out against the Yanukovych regime, and tried to recruit students and community members to oppose Yanukovych and join UDAR.

In September 2012, her university's dean warned Chuchman that she could be expelled for her political activity. The dean said that government representatives had ordered him to stop student protests against Yanukovych, and they had singled her out by name. He asked her to leave UDAR. Despite the warning, she continued her political activity.

Two months later, police assaulted, arrested, and detained Chuchman at a massive rally against electoral corruption. The Berkut (an elite police force that worked for the Yanukovych regime) closed in on the crowd with shields and batons, and

a Berkut officer grabbed Chuchman's wrist. When she tried to break free, the officer hit her in the shoulder with his baton and then forced her into a nearby van. She was detained for a day and then released without charges.

A few days later, the dean again implored Chuchman to stop her political activity. He explained that he had resisted pressure from government representatives to have her expelled, but he would not be able to protect her next time. Afterward, Chuchman said she was "scared," and for several months she stopped her political activism. The next spring, however, her UDAR colleagues persuaded her to rejoin the party.

In April 2013, Chuchman was assaulted by the Berkut after attending another large protest. An officer—seeing that she carried a flag representing opposition to the Yanukovych regime—yelled and cursed at Chuchman, then grabbed and shook her. Having heard that police were beating protestors, she pepper-sprayed the officer and fled. Before going far, she was hit from behind and lost consciousness. She awakened with blood all over her face, a broken nose, and a concussion; she was hospitalized for three weeks.

Soon after leaving the hospital, Chuchman flew to the United States and entered the country using a J-1 cultural-exchange visa.

Two months later, Ukrainian police began searching for her. They sent summonses to her university dormitory and to her parents' house, ordering her to appear for interrogation about unspecified criminal charges.

Over the next nine months, while Chuchman was in the United States, a wave of demonstrations and civil unrest

broke out across Ukraine. The Euromaidan, or "Revolution of Dignity," culminated in Yanukovych's ouster in February 2014. UDAR later merged with the new president's party.

In April 2014, when she had been in the United States for just under one year, Chuchman applied for asylum, withholding of removal, and protection under the Convention Against Torture. Two months later, the Department of Homeland Security served her with a Notice to Appear, charging her with removability for overstaying her visitor's visa. *See* 8 U.S.C. § 1227(a)(1)(B). In July 2014, at a brief appearance before an Immigration Judge, Chuchman, with assistance of counsel, conceded removability.

Meanwhile, back in Ukraine, the police continued to search for Chuchman. Her parents received additional summonses in her name (these continued through at least 2018), and the police questioned the parents twice about her whereabouts. When Chuchman's mother pressed for details, police said only that the case involved "public disturbances as a hooligan" or "assault." The record contains over 40 summonses in total.

At her hearing before an IJ in June 2018, Chuchman described her experience with UDAR and the Ukrainian government. Although Yanukovych had since been ousted and UDAR had become a part of the ruling majority, Chuchman testified that she feared reprisal from the many pro-Yanukovych officials (including police officers and judges) who remained in office and continued to punish those who had opposed him. She also testified that former UDAR members continued to be imprisoned and harmed (though she did not give names or other details). She provided country-condition evidence in the form of news articles and reports by humans-

rights organizations describing, for instance, a lack of accountability for police misconduct, ongoing corruption in the judiciary, and a soaring number of political prisoners.

The IJ denied Chuchman's petition. He found Chuchman credible but concluded that she had not demonstrated that the harm she suffered constituted persecution. In particular, he gave little weight to the police summonses because the record was unclear whether police were seeking Chuchman because of her political activity or because she had pepper-sprayed an officer. And even if she could show past persecution, the IJ decided, the changed conditions in Ukraine made it unlikely she would be persecuted in the future: UDAR was now part of the leading political party, and the reported arrests of political dissidents were taking place in parts of the country other than where Chuchman had lived (the Kyiv region).

The Board of Immigration Appeals adopted and affirmed the IJ's decision. The Board agreed with the IJ that the harm Chuchman suffered during her two police encounters was not persecution; nor were the threats she faced as a result of the police summonses (which conceivably could be part of a legitimate prosecution) or the dean's "expression of concern" that he could not protect her from expulsion if she continued her political activities. Next, the Board agreed with the IJ that Chuchman had not established a well-founded fear of future persecution: not only had there been a transfer of political power, but she also did not argue that the pro-Yanukovych officials whom she feared were motivated by political animus. Although Chuchman asked the Board to take judicial notice of UDAR's loss of power in 2019, it is noted that her brief to the court does not renew any arguments concerning present conditions in Ukraine.

## II. ANALYSIS

We understand Chuchman to make a two-part challenge to the conclusion of the IJ and the Board that she did not suffer past persecution. First, she appears to argue that the two police encounters were themselves enough to establish past persecution.

Under the deferential substantial-evidence standard, this court does not disturb the Board's decision unless the record "compel[s]" a contrary conclusion. *Herrera-Garcia v. Barr*, 918 F.3d 558, 561 (7th Cir. 2019) (emphasis omitted) (quoting *Minghai Tian v. Holder*, 745 F.3d 822, 828 (7th Cir. 2014)). Based on the available evidence, a finding of persecution is not compelled here. This court has determined that detentions and beatings of severity comparable to or greater than what Chuchman experienced did not compel a finding of persecution. *See, e.g.*, *Tsegmed v. Sessions*, 859 F.3d 480, 482, 485 (7th Cir. 2017) (petitioner detained twice for three days each, once without food, and punched in the face both times); *Mema v. Gonzales*, 474 F.3d 412, 416, 418 (7th Cir. 2007) (abduction at gunpoint by police followed by beating that caused loss of consciousness); *Zhu v. Gonzales*, 465 F.3d 316, 319–20 (7th Cir. 2006) (wound from beating required seven stitches).

Next, Chuchman argues that the Board focused too narrowly on the two police encounters and failed to consider the cumulative weight of her other evidence. She maintains that the Board ignored the attempts by police to question her and the dean's warnings of expulsion. But she misapprehends the Board's analysis. The Board explained why those events did not support a finding of persecution: The dean expressed concern but did not threaten to expel her, and the police summonses could have been part of a legitimate criminal

prosecution rather than a pretext for political retaliation. In any event, Chuchman points to no case, and we can find none, suggesting that such events elevate her experience to one of persecution.

Chuchman also raises two arguments challenging the Board's rejection of her claim asserting a fear of future persecution. First, she postulates that she is entitled to a presumption that she faces future persecution because she was persecuted in the past. But she did not establish past persecution and so was not entitled to any presumption that she would be persecuted in the future. *See W.G.A. v. Sessions*, 900 F.3d 957, 962 (7th Cir. 2018). Second, she believes that the Board (and IJ) ignored her country-condition evidence about ongoing corruption and politically motivated arrests. But none of her proffered evidence compels the finding that the current Ukrainian government seeks to harm former UDAR members or anti-Yanukovych activists. As the IJ noted, the country-condition evidence suggests that the politically motivated arrests occur in regions of Ukraine other than where Chuchman lived.

Finally, Chuchman raises a narrow factual challenge: that the Board misconstrued her argument by stating that she denied that her fear of persecution was based on her membership in UDAR. But even if she is correct (i.e., if in fact she had denied only that her fear was based on UDAR's status as an opposition party), any error would be harmless because she has established neither past persecution nor a well-founded fear of future persecution.

### III. CONCLUSION

Accordingly, we DENY the petition for review.